Max H. Galfunt, J.
The defendant is charged with violating section 511 of the Vehicle and Traffic Law in that the defendant did operate a motor vehicle on the public roads of this State while his operator’s license was suspended. The point of controversy is that the defendant’s license apparently was suspended without notice to the defendant (as permitted by the wording contained in the statute, immediately following Vehicle and Traffic Law, § 510, subd 3, par [i]). The defendant now seeks a "true order of acquittal.”
This is apparently a case of first impression as to how section 510 affects section 511 (both are sections of the Vehicle and Traffic Law). There has been prior case law interpreting section 510 in light of the powers of the Commissioner of Motor Vehicles, but no cases deal directly with the issue as to the propriety of suspension without notice of a license.
The relevant facts are as follows: The defendant, while operating a motor vehicle in the County of Queens, was involved in an automobile accident. The defendant thereupon notified the police. Members of the New York City police arrived. Through a standard procedural check, it was determined that the defendant’s license had been suspended for a number of prior outstanding traffic infractions committed prior to August 28, the date of the summons. The defendant admitted that on August 28, 1974, there were at least five *300 tickets which he had not answered or for which he had not paid any fine.
During the ensuing trial, the prosecution called as a witness a senior clerk with the Department of Motor Vehicles, who presented an "Abstract” containing the alleged infractions. The same senior clerk testified that in the regular course of business a notice of suspension would have been sent to the defendant. However, neither this witness nor anyone else testified that a notice of suspension had actually been sent to this defendant. •
The defendant testified that he never received notice of the suspension. He cites subdivision 4-a of section 510 of the Vehicle and Traffic Law which states such suspension shall take effect no less than 30 days from the day on which notice is sent by the commissioner to the person whose license is to be suspended. The defendant testified that he never received notice of the suspension by mail* or by any other means. (The defendant, separated from his wife at the time, stayed at his mother’s residence. His mail was brought to his mother’s house by his wife. His wife testified that no notice was ever received by mail.) The defendant thus contends that the People failed to prove that notice was given to the defendant and without such proof of notice a valid permissive suspension of the defendant’s license is not possible. (The court is cognizant of that part of the traffic summons which provides for suspension of a license if no appearance is made by the licensee charged with the particular offense. This is not sufficient notice under subdivision 4-a of section 510, which provides for suspension for nonappearance.)
The defendant, in his memorandum of law, has cited subdivision 4-a of section 510 as a defense, in that proper notice was not given. It is the opinion of this court that the prosecution has failed to prove that section as to notice. Furthermore, this court, in its own research, has read paragraph (i) of subdivision 3 of section 510 of the Vehicle and Traffic Law. Although not raised by either the People or the defendant, the issue presents itself whether this section precludes prosecution of the defendant and whether this section is constitutional.
The issue revolves around the wording in the Vehicle and Traffic Law (§ 510, subd 3, par [i]). It states in part: "A license *301 or certificate of registration * * * may, however, be temporarily suspended without notice, pending any prosecution, investigation or hearing. ” (Emphasis added.)
While the issue could be resolved on the fact as to whether the defendant did, in fact, receive notice, it must be discussed whether the provision of section 510 above can stand up under scrutiny as to due process. As stated in People v Farmer (36 NY2d 386) in the dissenting opinion of Cooke, J.: "It is a rudimentary element of due process of law, forcefully embodied in our State Constitution, that 'in any trial in any court whatever the party accused shall * * * be informed of the nature and cause of the accusation’ (NY Const, art I, § 6). Notwithstanding the somewhat peculiar status traffic violations have within our criminal justice system (see Matter of Rosenthal v Hartnett, 36 NY2d 269), a law or procedure, based upon whatever reason, be it convenience or expedience, that conflicts with this constitutional mandate, must fall.”
The provision in question was obviously intended to remove those drivers deemed dangerous from the highways. But as Judge Fuchsberg stated in People v Farmer (supra, p 392): "While such legislative intent is laudable, it may not impair the due process requirement for providing a defendant with notice of an offense charged”.
There evolves a conflict of policy. The Legislature can exercise its power to regulate the use of highways and may impose reasonable conditions before a license is issued and for the continued possession of same. Any appropriate means to insure competence and care on the part of its licensees is consonant with due process (Reitz v Mealey, 314 US 33; People v Rosenheimer, 209 NY 115).
Yet, possession of a driver’s license is a vested property right, which may not be taken away except by due process of law (NY Const, art I, § 6; Matter of Seufert v Tofany, 43 AD2d 890; Matter of Kamil v Tofany, 32 AD2d 1035; Matter of Moore v Macduff, 309 NY 35; Matter of Jacobs v Tofany, 56 Misc 2d 661; Matter of Valenti v Tofany, 55 Misc 2d 537; Bell v Burson, 402 US 535; Almeida v Lucey, 372 F Supp 109). Nor is a license to drive a gift or favor of a sovereign. It is a thing of real value which may not be taken away arbitrarily (Matter of Wignall v Fletcher, 278 App Div 28, affd 303 NY 435).
The ramifications of subdivision 3 of section 510 have been discussed in previous decisions.
In Robertson v Tomson (60 Misc 2d 275) the petitioner *302 brought an article 78 proceeding in order to review the peremptory suspension of his license.
The defendant had been arraigned for driving while his ability to operate a vehicle was impaired (Vehicle and Traffic Law, § 1192). His license was suspended for 60 days. Three weeks after this suspension, the defendant was again arraigned for driving while in an intoxicated condition. The defendant’s license was suspended during this arraignment.
The court held that the suspension was appropriate action due to the charge against the defendant and his previous offense for driving while intoxicated.
In Jackson v Commissioner of Motor Vehicles (68 Misc 2d 946) , a defendant motorist was allegedly involved in an auto accident causing the death of one pedestrian. At a hearing, the defendant refused to testify. For this reason, his license was suspended.
The court, in overturning the suspension, declared that (p 947) :
"A driver’s license may be suspended only for good cause based on competent legal testimony”.
Two differentiations can be made between these prior decisions and the set of facts before this bench. In the prior cases, the defendant had been arraigned or had experienced a hearing. Also, the challenge in the prior cases was directed to the Commissioner of Motor Vehicles in the form of an article 78 proceeding.
In Matter of Herkel v Kelly (14 Misc 2d 966), the petitioner was arrested and charged with speeding (doing 95 mph over one quarter mile). He pleaded guilty. The Commissioner of Motor Vehicles received a notice of the conviction and scheduled a hearing for the petitioner in December, 1958. The petitioner was notified of said hearing along with a notice stating that his license was suspended pending the hearing.
The petitioner alleged that the commissioner lacked sufficient evidence to cause a permissive temporary suspension and that paragraph (e) of subdivision 3 of section 71 (now § 510, subd 3, par [i]) of the Vehicle and Traffic Law permitting "a license or certificate of registration * * * [to] be temporarily suspended without notice, pending any prosecution, investigation or hearing” is unconstitutional.
The court (Sup Ct, Oneida County), in upholding the suspension, states (p 967) that the record contained "ample evidence *303 * * * to justify temporary suspension pending the scheduled hearing”. The commissioner’s act was not deemed arbitrary or capricious.
The court goes on to interpret paragraph (i) of subdivision 3 of section 510 as to the defendant’s argument that the section was unconstitutional for no specific time limit was imposed as to the length of suspension. The court stated that due to the presumption of constitutionality (Knapp v Fasbender, 1 NY2d 212), implicit in section 510 is the requirement that any suspension be temporary. The licensee’s avenue of relief for a suspension is an article 78 proceeding. Therefore, the court concluded that the licensee was not deprived of due process.
The court, in reaching its decision, applied a balancing test. The court felt that property rights of the licensee should not be taken away without due process. Yet the Legislature has a legitimate interest in regulating the use of its highways and may control the issuance of licenses.
This court feels that the conclusion reached in the Matter of Herkel v Kelly (14 Misc 2d 966, supra) case is incorrect. Today, even a temporary suspension of a valuable property right, such as a license, without notice and an opportunity for a hearing is violative of due process (as will be seen in our discussion of Bell v Burson, 402 US 535, supra).
Also this court feels that omissions from a statute generally should not be supplied by construction. Nor should a court amend a statute by inserting words that are not there (McKinney’s Cons. Laws of N.Y., Book 1, Statutes, § 363). This court feels that a presumption of constitutionality, along with an interpretation by a court, is not sufficient to deprive a person of due process in regard to a valuable property right.
Thus, the cases covering the suspension of a license without notice concern the suspension after arraignments or hearings based on "substantial evidence.”
Section 510 has been held constitutional (Matter of Cadieux v Macduff, 1 AD2d 360, app dsmd 1 NY2d 827; Matter of Barton v Hults, 23 Misc 2d 861). Yet, the court is aware of the increasing vigilance by the Federal and State judiciary as to the requirement of due process.
Illustrative of this concept is Bell v Burson (402 US 535, supra). In this case, dealing with motor vehicle licenses, the court stated (p 539): "Once licenses are issued, as in petitioner’s case, their continued possession may become essential in *304 the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. Sniadach v Family Finance Corp., 395 US 337 (1969); Goldberg v Kelly, 397 US 254 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated as a 'right’ or a 'privilege’.” (Emphasis added.)
To have the capacity to suspend a license without notice does not appear to pass the more and more demanding concepts as to due process. It is apparent that due process of law requires more formality and accuracy in the disposition of such an important privilege and right of a citizen than is contained within the section 510 (subd 3, par [i]).
This court finds that the paragraph (i) of subdivision 3 of section 510 of the Vehicle and Traffic Law is unconstitutional. Where the judiciary is required to "fill in the blanks” for the section to be deemed complying with due process (see cases cited supra), that section will fail to pass constitutional requirements.
This court finds that the defendant was never notified as to the suspension of his license and thus was not guilty of the charge of operating a motor vehicle while his license was suspended.

 Subdivision 7 of section 510 states that notice of revocation or suspension may be given by mailing the notice to the address contained on the license.