OPINION OF THE COURT
Julian Hertz, J.
The defendant was charged with a violation of section 511 of the Vehicle and Traffic Law, operating a motor vehicle while his license was suspended, said license having been suspended 22 times. On a motion to dismiss the defendant states that since he never applied for nor possessed a license to operate a motor vehicle he cannot be charged under this section.
*934 The uncontroverted facts are that the defendant does not have a license, never applied for one and indeed, never had one. He has received repeated summonses for motor vehicle violations however. This case is identical to People v Evans (79 Misc 2d 131) where the court reversed a conviction under section 511 of the Vehicle and Traffic Law because the defendant had never been licensed to drive. The court there refused to conclude that "license” as used in section 511 should be read in its generic sense as synonymous with "operating privilege.” In so doing, however, the court (supra, p 132) recognized that the defendant had found a convenient loophole' in the law since "an individual who flagrantly violates the law by never applying for a license but driving nevertheless is in a better legal position than an individual whose driving record is blemished by a single offense and whose license was consequently revoked.” This is so because driving without a license is only a violation under subdivision 1 of section 509 of the Vehicle and Traffic Law, but driving while a license is suspended constitutes a misdemeanor. The court in People v Evans (supra) urged the Legislature to correct this inequity in the law.
In 1976, section 511 was amended (L 1976, ch 404) to read "Any person operating a motor vehicle upon a public highway while his license or his privilege of operating a motor vehicle in this state or his privilege of obtaining a license issued by the commissioner is suspended or revoked shall be guilty of a misdemeanor”. (Vehicle and Traffic Law, § 511, subd 1.) This section should be read in conjunction with section 510 of the Vehicle and Traffic Law, which outlines the circumstances under which a revocation or suspension may occur and the procedures to be followed. Both sections were amended in 1976 in order to cover the situation posed by the Evans case (72 Misc 2d 131, supra).
Section 510 (subd 2, par c) of the Vehicle and Traffic Law provides for the mandatory revocation or suspension of an unlicensed driver’s privilege to obtain a license whenever he has been convicted of a violation which would require the revocation or suspension of a license if the person so convicted was the holder of a license. In addition, subdivision 3 of section 510 lists the circumstances under which an unlicensed driver’s privilege of obtaining a license may be suspended or revoked, one of which is for the habitual or persistent violation of any of the provisions of this chapter. (Vehicle and *935 Traffic Law, § 510, subd 3, par [d].) Clearly, therefore, the defendant, as an unlicensed driver, may be properly charged with a violation of section 511.
As has been discussed the Legislature (by means of the afore-mentioned 1976 amendments to Vehicle and Traffic Law, § 511) has been responsive to the problem encountered in People v Evans (72 Misc 2d 131, supra). While this court could let the matter go at that, the court conceives that there may not be unanimity on the aforestated conclusion (that the legislative action cured the vacuum in the statutory scheme).
For this reason this court troubles to note its substantial doubt with the conclusion reached in the Evans case. Indeed, this court perceives scant reason for placing one situated as here (an unlicensed driver) in a position legally superior to one who has complied, at least, with the licensing requirement.
It is plain that citizens are bound to knowledge of the law, i.e., that a license is required to drive. It follows that the State Legislature is vested with broad and necessary power to enforce licensing requirements in an area fraught with the public interest. It is the conclusion of this court, therefore, that the principles of justice are not overburdened by constructing a legal fiction constituting a necessary premise making it possible to deal with miscreants who ignore the apparent need to submit to and comply with motor vehicle licensing requirements. As a consequence, this court is prepared to indulge whatever legal fiction is needed to deal sternly with violators in this area and this includes a right possessed by the enforcing agency to suspend or revoke a nonexisting license.
Obviously, it would have been a simple matter for the Legislature to have amended subdivision 1 of section 509 of the Vehicle and Traffic Law (driving without a license) to upgrade that violation to misdemeanor level. Why then did it not do so? This court perceives that the reason lies in sound legislative wisdom deriving from the fact that there may be many instances of driving without a license (i.e., forgetting to have a license on one’s person, a junior permit holder driving after hours, etc.) for which the scope of penalties under the infraction section is adequate. But that is a very different matter from the facts at bar where the defendant is charged with relatively callous disregard of the law in that he drove *936 not merely without a license but that he did so while numerous suspension orders had been filed against him.
The District Attroney must prove, of course, that the defendant’s privilege of obtaining a license had been properly suspended before a conviction can be had. (See People v Emmanuel, 82 Misc 2d 298; People v Walsh, 81 Misc 2d 757; People v Green, 84 Misc 2d 37; Vehicle and Traffic Law, § 510, subd 3.) That, however, is a matter for trial and the District Attorney is entitled, at this point, to proceed on the case and to attempt to prove the defendant’s guilt beyond a reasonable doubt. Accordingly, the defendant’s motion to dismiss is denied.