**STATE of Minnesota, Plaintiff,**

v.

**Kevin Mitchell STANKEY, Defendant.**

**No. 51982.**

Supreme Court of Minnesota.

Jan. 27, 1981.

Warren Spannaus, Atty. Gen., St. Paul, R. Kathleen Morris, County Atty., Shakopee, for plaintiff.

Samuel A. McCloud, Minneapolis, for defendant.

SHERAN, Chief Justice.

This is a criminal appeal pursuant to an order of the district court certifying a question as important or doubtful. The defendant was charged with three traffic offenses, one of which was aggravated driving while under the influence, Minn.Stat. § 169.129 (1978), which makes it a gross misdemeanor to operate a motor vehicle while under the influence of alcohol "before [one's] driver's license . . . has been reinstated following its cancellation, suspension or revocation" for driving while under the influence. The district court granted defendant's motion to dismiss the count charging aggravated driving while under the influence but stayed further proceedings on the other charges pending the pretrial appeal. The issue is whether a driver may be convicted of aggravated driving while under the influence if he would have been eligible to apply for reinstatement before the alleged violation but was prevented from doing so because his license had been suspended for a different reason, nonpayment of a traffic fine. We answer the question affirmatively, reverse the dismissal order, and remand for trial.

█ The aggravated driving while under the influence statute, as enacted by 1976 Minn.Laws, ch. 297, § 1, and then codified in Minn.Stat. § 171.245 (1976), provided:

Any person who operates a motor vehicle, the operation of which requires a driver's license, upon the highways in this state in violation of section 169.121 while the driver's license or driver's privilege is cancelled, suspended or revoked (1) because of the operation of a motor vehicle while the person was under the influence of alcohol or a narcotic drug; or while the person's blood had an alcohol content above a prescribed level; (2) because the person operated a motor vehicle which contained an open bottle containing an intoxicating liquor or non-intoxicating malt liquor which had been opened; or (3) because the person refused to take a test which determines the alcoholic content in his blood when requested to do so by a proper authority, is guilty of a gross misdemeanor.

In *State v. Wicks*, 258 N.W.2d 598 (Minn. 1977), we considered whether the statute, as then worded, was violated when the alleged aggravated violation occurred after the fixed period of revocation for the prior driving while under the influence had expired but before the driver had sought and obtained a reinstatement of his license. The contention made on behalf of the defendants, who were in the same situation, was that a driver's license is no longer revoked *because* of a driving while under the influence conviction if the period during which the driver was ineligible to apply because of the driving while under the influence conviction had expired. We answered this issue as follows:

[T]he question before us is precisely for what period of time is a license or privilege to drive revoked, within the meaning of the statute, because of the operation of a motor vehicle while under the influence of alcohol.

The revocation notices do not simply state "license revoked for 30 [or 60 or 90] days." After declaring that "Your Minnesota Driver License or privilege to operate a Motor Vehicle is hereby REVOKED X," the notice specifies the reason for the revocation and states several "requirements" which are prerequisites to the issuance of a new license. The expiration of a specified number of days after surrender of the license is only one of the possible requirements. Other requirements include passing a complete driver license test; payment of a fee of $2.50 for each examination; completion of a driver improvement clinic. We hold that when a license or privilege is revoked because of driving under the influence, it continues to be revoked within the meaning of § 171.245 until a new license is issued. 258 N.W.2d 601.

The 1978 legislature, in revising and rearranging the statutes dealing with driving while under the influence and implied consent, repealed section 171.245 and placed a revised version of the provision in section 169.129. 1978 Minn.Laws, ch. 727, §§ 9, 11.

In adopting section 169.129 the legislature in effect adopted the holding of the *Wicks* case. Section 169.129, on which the prosecution of defendant for aggravated driving while under the influence is based, provides:

Any person who drives, operates, or is in physical control of a motor vehicle, the operation of which requires a driver's license, within this state in violation of section 169.121 or an ordinance in conformity therewith before his driver's license or driver's privilege has been reinstated following its cancellation, suspension or revocation (1) because he drove, operated, or was in physical control of a motor vehicle while under the influence of alcohol or a controlled substance or while he had an alcohol concentration of 0.10 or more or (2) because he refused to take a test which determines the presence of alcohol or a controlled substance when requested to do so by a proper authority, is guilty of a gross misdemeanor. Jurisdiction over prosecutions under this section is in the district court.

The district court agreed with defendant's argument that an exception should be made under the facts of this case. The district court reasoned that the situation presented in *Wicks* the failure to seek and obtain reinstatement after the revocation for driving while under the influence was attributable to the driver whereas in this case the driver was prevented from seeking reinstatement by the state for conduct which was completely independent of and unrelated to the driving while under the influence violation.

█ We are not persuaded that the different fact situation in this case mandates a different result. There are any number of explanations which a driver could offer for his failure or inability to seek and obtain reinstatement of his license, including laziness, forgetfulness, failure to pass a complete driver's license test, a failure to complete a driver's improvement clinic, or simply a failure to pay a license fee. Here it may well have been one or more of those things as well as defendant's failure to pay a fine which prevented him from getting his license reinstated. We believe that there is merit to the state's argument that to allow defendant to escape prosecution for aggravated driving while under the influence in this situation would be to treat the more careless driver—the one whose license was suspended for other reasons in addition to his driving while under the influence—more favorably than the driver who failed to seek and obtain reinstatement for one or more of the reasons enumerated in *Wicks*.

One argument of defendant is that he should be placed in no different position than a driver who gets his license reinstated, then learns that his license is suspended for nonpayment of fines, and then receives a ticket for driving while under the influence. Defendant argues that because the aggravated driving while under the influence statute could not be used against this hypothetical driver it should not be used against him. Even admitting that this argument has a superficial appeal, we believe it wrongfully assumes that but for the suspension for nonpayment of fines defendant could have successfully obtained reinstatement. We believe it makes more sense to compare defendant with the drivers in *Wicks* then with the driver in defendant's hypothetical fact situation. The argument also ignores the clear wording of the statute, which is that the statute is violated whenever a driver drives while under the influence before his license has been reinstated following its suspension or revocation for driving while under the influence. Finally, the argument also attempts to somehow place the blame for the lack of reinstatement on the state, when it is clear that it was defendant's own conduct which prevented him from seeking reinstatement.

In summary, we believe that the test adopted by the legislature is clear and easily applied and that the purposes of the statute would not be well served by allowing a jury to speculate that a driver such as defendant would have been able to obtain reinstatement but for the unrelated suspension, whereas the jury clearly is not allowed to so speculate in the case of a driver who did not have an unrelated suspension but

simply failed to seek and obtain reinstatement.

Reversed and remanded.