Larry FRANCIS, Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. 5659.

Court of Appeals of Alaska.

March 4, 1982.

Daniel Westerburg, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Anchorage, for appellant.

Elaine Vondrasek, Municipal Prosecutor, and Theodore D. Berns, Municipal Atty., Anchorage, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

OPINION

PER CURIAM.

On July 28, 1979, Larry Francis was the driver of a motor vehicle that was involved in an accident in the Municipality of Anchorage. Francis was fourteen years of age at the time. In September 1979, he was notified by the Department of Motor Vehicles that his driving privileges would be suspended for three years beginning October 21, 1979, because of his failure to furnish proof of financial responsibility as required under Title 28, chapter 20. On July 12, 1980, Francis, then 15, drove again within the municipality and was stopped by a policeman, who issued a complaint charging him with driving without a license, in violation of AMC 9.12.010(A). On July 17, the Municipal Prosecutor's office filed an information replacing the complaint and charged Francis with driving while his license was suspended, in violation of AMC 9.12.010(B). However, Francis never had an Alaska driver's license.

Francis filed a motion to dismiss the information on the ground that on the undisputed facts the municipality would not be able to prove he violated the ordinance as alleged. The district court denied the motion. Francis entered a plea of no contest, reserving the right to appeal the denial of his motion.

The single issue presented for our review is whether or not a fifteen year old who never had a driver's license may be convicted of operating a vehicle while his license was suspended, in violation of AMC 9.12.-010(B).

Francis was charged and convicted under the second clause of AMC 9.12.010(B):

No person may violate a condition or privilege of such license [*i.e.*, a license to operate a motor vehicle], nor may any person drive a vehicle while such license is suspended, revoked, refused or cancelled. . . .

In AMC 9.04.250(B) the municipality has defined "license to operate a motor vehicle" as follows:

'License to operate a motor vehicle' means any driver's license or any other license or permit to operate a motor vehicle issued under or granted by, the laws of the state and/or this municipality including:

. . . .

B. The privilege of any person to drive a motor vehicle whether or not such person holds a valid license. . . .[1]

Since "license" in AMC 9.12.010(B) includes "privilege" to drive, we must determine whether or not Francis had a privilege to drive a motor vehicle either in 1979 when the purported suspension went into effect or in 1980 when he was charged with operating a vehicle while his license/privilege was suspended.

"Privilege to drive" is not defined in the municipal ordinances and the Alaska Supreme Court has not considered this issue. In the context of the municipal ordinances and the state's drivers' licensing scheme, we conclude that "privilege to drive" must mean some kind of legal authorization to drive. The privilege in this sense *follows* issuance of a driver's license or establishment that one fits within an exemption to the licensing requirement. We reject the interpretation suggested by the city that privilege to drive means nothing more than privilege to apply for a driver's license. While we recognize that at age fourteen, Francis had the opportunity under state law to apply for two categories of licenses, *see* AS 28.15.051, such an opportunity gave him no privilege to drive a vehicle on the public streets; that privilege is earned only by successfully completing the application process, including passing a written test, driving test, and eye test. *See* AS 28.15.-081. We believe our use of the term privilege—to mean legal authorization to drive—is most consistent with the common sense meaning of the term[2] and with the use of the term "privilege" in various state statutes, including one from which AMC 9.04.250(B) evidently derives. *See* AS 28.-35.260(5), 28.15.011(b) and (c). *See also* 14 Blashfield Automobile Law and Practice, § 468.15, at 115 (3d ed. 1969) ("A person seeking to use the streets or highways for the operation of a motor vehicle is asking a privilege from the government . . . ."). These sources all suggest that the privilege to drive is specifically conferred by the government, most commonly following issuance of a driver's license.

In addition, we note that the procedural provisions of Title 28, chapter 20, under which Francis' "privilege" was purportedly suspended clearly envision that the driver have a license which can be suspended. AS 28.20.090(1).[3] Both logic and language would be strained if we held that Francis had a privilege to drive in October, 1979, the time of the purported suspension.[4]

1. The other subparts of this ordinance state that "license" includes (A) any temporary license or instruction permit, (C) any nonresident's operating privileges, and (D) a municipal chauffeur's license. AMC 9.12.010(B) and 9.04.250(B) seem to derive in general terms from AS 28.15.291 and 28.35.260(5).

2. Webster's New World Dictionary defines "privilege" as follows:
   1. a right, advantage, favor, or immunity specifically granted to one; esp., a right held by a certain individual, group, or class, and withheld from certain others or all others 2. a basic civil right, guaranteed by a government [the *privilege* of trial by jury]. . . .

3. Separate statutory sections discuss the applicability of the financial responsibility laws to unlicensed drivers. These sections provide simply that the unlicensed driver subject to these laws "may not be licensed" until certain conditions are met; they do not use the language of "suspending" or refer to any "privilege" the unlicensed driver may have had. AS 28.20.160, 28.20.250.

4. The purported suspension is not wholly a nullity. Under AS 28.20.160, Francis can be kept from getting a license for the specific period, and he may be punished if he operates a vehicle without a license.

"Privilege to drive" under AMC 9.04.-250(B) thus does not cover Francis' situation but includes driving privileges by military or diplomatic personnel stationed in the state, the privilege of farmers to drive farming equipment on public highways for brief distances, and other miscellaneous categories of persons not covered by subparts (A), (C), or (D) who are legally authorized to operate motor vehicles in this state.

The crime with which Francis was charged is driving while his license/privilege to drive was suspended. A necessary element of this offense is that the license/privilege have been suspended. Since Francis never had any license or privilege to drive, there was nothing to suspend. He, therefore, could not be convicted as charged. *See State v. Cady*, 136 Vt. 29, 383 A.2d 607 (1978); *City of Aberdeen v. Cole*, 13 Wash.App. 617, 537 P.2d 1073 (1975). *See also People v. Evans*, 79 Misc.2d 131, 359 N.Y.S.2d 449 (1974); *Bryant v. State*, 163 Tex.Cr.R. 544, 294 S.W.2d 819 (1956) (both holding driver cannot be convicted of driving while license suspended if at the time of the alleged offense the driver had no license to suspend).[5]

The judgment of the district court is REVERSED.

---

[5] Our resolution of this matter makes it unnecessary to determine whether driving without a license is a lesser included offense of driving with license suspended.

Driving without a license under AS 28.15.-011(b) and driving while license suspended, AS 28.15.291(a), are both misdemeanors with possible penalties of up to 90 days imprisonment, $500 fine, and license suspension or revocation. AS 28.35.230(a), (b). Although a violation of the former section carries no mandatory minimum sentence equivalent to the 10-day jail sentence, and one-year license revocation of the latter, the available maximum penalties are the same. By declining to permit conviction of a never licensed driver under AS 28.15.291(a),

this court would not enable offenders to avoid serious penalties. The municipal code provides more stringent possible penalties in case of a violation of AMC § 9.12.010(B) (driving while license suspended) ($1000 fine and/or one year in jail) than of AMC § 9.12.010(A) (driving without a license) ($500 fine and/or 30 days in jail), and AMC § 9.12.010(B) also carries a mandatory minimum of 10 days' imprisonment and a period of license revocation. However, the maximum sentences are rarely imposed, and to refuse to stretch AMC § 9.12.010(B) to include never licensed drivers will not permit such drivers to avoid serious penalties in cases warranting such sanctions.