Carroll
No. 84-229

## The State of New Hampshire

### v.

### Robert Callahan
### and
### Russell Thornton

February 22, 1985

*Gregory H. Smith*, attorney general (*John A. Malmberg*, assistant attorney general, on the brief, and *Tina Schneider*, attorney, orally), for the State.

*Law Offices of O. Lee Gregory*, of Conway (*Judith N. Reardon* on the brief and orally), for the defendant.

DOUGLAS, J. These consolidated cases present the question whether the period of license revocation after a conviction of driving while intoxicated continues until the revokee regains his license or whether it terminates automatically at the end of the court-ordered period of license deprivation. We hold that the revocation continues in effect until the license is regained.

Defendants Robert Callahan and Russell Thornton were each convicted of driving while intoxicated. Callahan was found guilty of a violation of RSA 265:82 (1982) (now codified at RSA 265:82 (Supp. 1983)) in superior court on February 23, 1983, and Thornton was convicted in district court under RSA 262-A:62 (Supp. 1979) (now codified at RSA 265:82 (Supp. 1983)) on March 10, 1981. As a result of these convictions, both defendants had their privileges to operate motor vehicles in New Hampshire revoked. Callahan's three and one-half month revocation began on the date of his district court conviction, November 30, 1982, and Thornton's 60-day revocation began on March 10, 1981.

After revocation of their licenses, each defendant received a Notice of Action from the department of motor vehicles. These notices stated that the defendants' licenses had been revoked and that they could not operate a motor vehicle in New Hampshire until their privileges to operate had been restored by the director of motor vehicles. The notices also set forth the requirements for such restoration: filing of proof of financial responsibility, application for a new license, and payment of a twenty dollar fee. Neither defendant took the necessary steps to regain his license once the court-ordered period of license deprivation had elapsed.

In September, 1983, both defendants, in separate incidents, were arrested for driving after revocation or suspension, RSA 263:64 (Supp. 1983). Each of them was convicted of this charge in Conway District Court (*Greene*, J.), Callahan on December 6, 1983, and Thornton on January 4, 1984. Both lost their licenses for a year and were fined and sentenced to a seven-day term of imprisonment as mandated by RSA 263:64, IV (Supp. 1983). They were released pending appeal to superior court.

A pretrial scheduling conference on the defendants' cases was held in Superior Court (*Dunfey*, C.J.). At that time the defendants filed a motion to consolidate their cases on the grounds that they presented common issues of law, most notably that the defendants could not be convicted of driving after revocation since their court-ordered periods of revocation had expired. The cases were not consolidated at that time, but the court ordered that a hearing be scheduled to decide that issue. At the subsequent hearing, the Court

(*Gray*, J.) found that the parties had been properly charged. This appeal followed.

We recently decided an issue similar to the one now before us in *State v. Batchelder*, 125 N.H. 694, 484 A.2d 1186 (1984). In that case, the defendant was found to be an habitual motor vehicle offender and, as such, was subject to a statutory license deprivation period of four years. RSA 262:22. At the end of four years, an habitual offender may petition for restoration of his driving privileges, and the court has discretion to grant or deny the petition. RSA 262:24. A person who drives after having been declared an habitual offender is subject to a mandatory jail sentence of one year. RSA 262:23.

The defendant in *Batchelder* never sought to have his driving privileges restored once the four-year deprivation period had elapsed. He was arrested for driving on a public way six and one-half years after his license had been revoked. The issue raised in that case was whether the revocation period expired automatically after four years or whether it continued until the defendant regained his license, making him subject to the mandatory jail term prescribed by RSA 262:23 until that time. We held that the four-year period is merely the minimum period for license deprivation, during which time a license may not be restored, and that habitual offender status does not end until the revokee takes affirmative steps to renew his license and his license is indeed restored by the court. The fact that the defendant is subject to a mandatory jail term for driving before he has regained his license does not change this result.

RSA 263:64, I (Supp. 1983), the statute under which the defendants in the present case were convicted, provides:

> "No person shall drive a motor vehicle in this state after the director or the justice of any court has suspended or revoked his license to drive or after his driving privilege has been so suspended or revoked."

RSA 259:90 (Supp. 1983), which defines "revocation" as used in the motor vehicle statutes, provides in part:

> "Said *revocation* of any license, registration, permit or privilege *shall remain in effect until a new license*, registration or permit *has been issued or the privilege has been restored.*" (Emphasis added.)

RSA 263:64, IV (Supp. 1983) sets forth the penalties, including a mandatory seven-day jail term for DWI offenders who drive while their licenses are revoked:

> "IV. Any person who violates the provisions of this section shall be guilty of a misdemeanor. Any person who

violates this section by driving a motor vehicle in this state after his license or driving privilege has been suspended or revoked for a violation of RSA 265:82 or RSA 265:82-a shall be guilty of a misdemeanor and shall be sentenced to imprisonment for a period not less than 7 consecutive 24 hour periods to be served within 6 months of the conviction, shall be fined not more than $1,000, and shall have his license or privilege revoked for an additional year."

■ We see no reason to distinguish this case from *Batchelder*. The defendants violated RSA 263:64, I (Supp. 1983) by driving before they regained their licenses and are subject to the penalties set forth in RSA 263:64, IV (Supp. 1983).

■ The defendants next contend that RSA 263:64, IV (Supp. 1983) is unconstitutionally vague in specifying what conduct it intends to punish with a mandatory seven-day jail sentence. This argument must be rejected since the portions of RSA 263:64 (Supp. 1983) and RSA 259:90 (Supp. 1983), cited above, give adequate notice to the person of ordinary intelligence that the period of revocation extends to the time when his driving privileges are restored.

Even if the statutes were less clear, the Notices of Action received by both defendants gave specific warning that they could not drive until they had regained their licenses: "When your PRIVILEGE TO OPERATE HAS BEEN SUSPENDED or REVOKED you must CEASE OPERATING and you may not again operate a motor vehicle in New Hampshire until your privilege to operate has been restored." (Emphasis in original.) As we have already noted above, the notices also stated that the defendants were obliged to provide a certificate of insurance, a new license application, and a twenty dollar fee before they could regain their licenses.

The defendants further argue that, even if the period of revocation extends to the time of reissuance of the license, the mandatory sentencing provided for in RSA 263:64, IV (Supp. 1983) is inapplicable to them. As the basis for this claim, they state that their DWI convictions were based on statutes different from those specifically referred to in RSA 263:64, IV (Supp. 1983). That paragraph subjects anyone who drives in New Hampshire "after his license or driving privilege has been suspended or revoked for a violation of RSA 265:82 or RSA 265:82-a" to a mandatory jail term of seven days.

Defendant Callahan was convicted under the 1982 version of RSA 265:82. At the same time that RSA 263:64, IV (Supp. 1983) went into effect, this version of the DWI law was superseded by RSA

265:82 (Supp. 1983). Therefore, Callahan argues, conviction under the 1982 version of RSA 265:82 is not intended to be subject to the severe penalties provided for by RSA 263:64, IV (Supp. 1983). This argument is without merit.

First, the statute under which Callahan was convicted is one which is specifically referred to in RSA 263:64, IV. Second, the changes made in the drunk driving statute from 1982 to 1983 would in no way affect Callahan's conviction. The 1983 version of RSA 265:82 added the offense of driving while there is .10 percent or more alcohol in a person's blood, to the offense of driving while under the influence. *Compare* RSA 265:82, I (1982) *with* RSA 265:82, I(a) (Supp. 1983). Since Callahan's license would have been revoked under either version of RSA 265:82, he is subject to the seven-day mandatory jail sentence provided for under RSA 263:64, IV.

Defendant Thornton's revocation was based upon his conviction under RSA 262-A:62, which is not specifically referred to in RSA 263:64, IV (Supp. 1983). Nevertheless, as in Callahan's case, the conduct for which Thornton was convicted is the same as that prohibited in the present drunk driving statute. Indeed, the statutory definition of the offense of driving while intoxicated did not change when the offense was recodified in 1982. *Compare* RSA 262-A:62, I (Supp. 1979) *with* RSA 265:82, I (1982).

That the intent of the legislature was to impose a mandatory seven-day jail sentence on anyone who drives after having his privilege revoked because of a DWI offense is apparent from the provision that was codified as RSA 263:64, IV. The original legislation, Laws 1983, chapter 373, was entitled "AN ACT RELATIVE TO DRIVING WHILE INTOXICATED." Moreover, the specific section of the legislation that became RSA 263:64, IV was entitled, "Driving after DWI Revocation or Suspension." Laws 1983, 373:3. *See Bourne v. Sullivan*, 104 N.H. 348, 352–53, 186 A.2d 834, 837 (1962) (title of act not conclusive, but significant when considered in connection with legislative history and ambiguities).

█ The conduct for which Thornton was most recently convicted, driving while his license was revoked for driving under the influence, is the exact conduct which RSA 263:64, IV (Supp. 1983) seeks to punish. To excuse Thornton from punishment under that statute merely because the particular DWI statute under which he was convicted is not specifically named in RSA 263:64, IV (Supp. 1983) would be elevating form over substance. Therefore, defendant Thornton is also subject to the mandatory license revocation of one year and the jail term of seven days prescribed by RSA 263:64, IV (Supp. 1983).

The defendants' final claim is that RSA 263:64, IV (Supp. 1983) did not become effective until January 1, 1984, approximately three months after their arrests, and that, therefore, they are not subject to that statute. As the basis for this, they cite RSA 14:9-a, I(c) (Supp. 1983).

RSA 14:9-a, I (Supp. 1983) states that, "[e]ach law passed by the general court shall take effect 60 calendar days following passage ... except:

> (a) If the general court specifically provides otherwise
> . . . .
> (c) Each law affecting criminal or civil penalties, judicial practice and procedure, limitations of actions, and statutory rights and remedies shall take effect on the January 1 following passage."

RSA 263:64, IV (Supp. 1983) is a statute falling within the descriptions of the exceptions to RSA 14:9-a, I (Supp. 1983) contained in both subparagraphs (a) and (c), in that the legislature provided for a specific date, August 21, 1983, upon which that statute was to take effect, *see* Laws 1983, 373:24, II, and the statute affects criminal penalties.

We cannot presume that the legislature intended in passing subparagraph (c) of RSA 14:9-a, I, to abrogate its power to set alternative dates for statutes to become effective whenever they relate to the numerous laws which would fall within that subparagraph. This is particularly so since subparagraph (a) provides that the legislature may specify effective dates.

■ Therefore, we hold that when a statute falls within the description of both subparagraphs (a) and (c) of RSA 14:9-a, I (Supp. 1983), the specific effective date provided for by the legislature will take precedence over the general date provided for in subparagraph (c). This is consistent with our often-stated rule "that a specific law controls in a specific case over a general law." *In re Gamble*, 118 N.H. 771, 777, 394 A.2d 308, 311 (1978).

*Affirmed.*

All concurred.