Kevin ROBERTS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–342.

Court of Appeals of Alaska.

May 31, 1985.

---

James L. Johnston, Anchorage, for appellant.

Russell S. Babcock, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., SINGLETON, J., and JOHNSTONE, Superior Court Judge.\*

16 of the Constitution of Alaska.

BRYNER, Chief Judge.

Kevin Roberts was convicted after a jury trial of driving while his license was suspended (DWLS), in violation of AS 28.15.-291.[1] He later filed a motion for post-conviction relief, seeking to set aside his conviction based on this court's decision in *Francis v. Anchorage*, 641 P.2d 226 (Alaska App.1982). District Court Judge Natalie K. Finn denied the motion. Roberts has appealed, claiming that the District Court erred in failing to vacate his DWLS conviction. We reverse.

Roberts has apparently never had an Alaska driver's license. It is uncontested that his California driver's license expired sometime during or prior to 1981. In 1982 and 1983 the State of Alaska purported to suspend Roberts' driver's license or privilege to drive based on (1) a conviction for driving while intoxicated, (2) an accumulation of points, and (3) failure to provide proof of financial responsibility.

Subsequently, on June 8, 1983, Roberts was arrested for DWLS. After being convicted of that offense, Roberts moved to have the conviction vacated. He argued that, since he did not have a valid driver's license in any jurisdiction when the state purported to suspend his privilege to drive in 1982–1983, he had no license or driving privilege to suspend. Accordingly, Roberts

asserted that the entry of a conviction for DWLS had been improper. Upon denial by the District Court of his post-conviction motion, Roberts appeals, reasserting the argument he raised below.[2]

In *Francis v. Anchorage*, 641 P.2d 226 (Alaska App.1982), we considered a claim which was similar to the one raised by Roberts. *Francis* involved a fifteen-year-old driver who was convicted of DWLS under section 9.12.010(B) of the Anchorage Municipal Code.[3] Prior to Francis' DWLS arrest, the state had suspended his driving privilege for failure to furnish proof of financial responsibility following an accident. Francis argued that he could not properly be convicted of DWLS because, at the time the state purported to suspend his driving privilege, he had no license or privilege to suspend. In reversing Francis' conviction, we expressly ruled that a driver's license or privilege to drive cannot properly be suspended unless the driver was in fact licensed or otherwise actually privileged to drive a motor vehicle within the state. Specifically, we held:

> In the context of the municipal ordinances and the state's driver's licensing scheme, we conclude that "privilege to drive" must mean some kind of legal authorization to drive. The privilege in this sense *follows* issuance of a driver's

1. At the time of Roberts' offense, AS 28.15.291 provided in relevant part:

    *Driving while license cancelled, suspended, or revoked, or in violation of limitation.*

    (a) No person may drive a motor vehicle on a highway or vehicular way or area in this state at a time when his driver's license, or privilege to drive in this state if he is licensed in another jurisdiction, has been cancelled, suspended or revoked, or when he is driving in violation of the limitation placed upon his license, even when he is driving under a license issued in another jurisdiction....

2. We have previously held, as a matter of policy, that an attack to the validity of an administrative license suspension could not properly be raised for the first time collaterally, in a prosecution for DWLS. *See McClain v. State*, 641 P.2d 1265 (Alaska App.1982). Our decision in *McClain*, however, involved a non-jurisdictional challenge—one that did not implicate the authority of the suspending agency. We note that cases from other jurisdictions have drawn distinctions between collateral challenges involv-

ing jurisdictional and non-jurisdictional arguments against the validity of a driver's license suspension. *See, e.g., State v. Putman*, 137 Vt. 410, 407 A.2d 161 (1979). Ultimately, we need not decide whether a collateral attack raising jurisdictional questions should generally be adjudicated on its merits in cases such as the present one. Roberts' claim is clearly jurisdictional in nature. Judge Finn ruled on the merits of Roberts' argument below, and the state has not contended, either below or on appeal, that a collateral attack should not be considered in this case. Under these circumstances, we have deemed it appropriate to decide Roberts' claim despite its collateral nature.

3. At the time of Francis' offense, AMC 9.12.-010(B) provided:

    No person may violate a condition or privilege of such license, nor may any person drive a vehicle while such license is suspended, revoked, refused or cancelled....

license or establishment that one fits within an exemption to the licensing requirement. We reject the interpretation suggested by the city that privilege to drive means nothing more than privilege to apply for a driver's license. While we recognize that at age fourteen, Francis had the opportunity under state law to apply for two categories of licenses, such an opportunity gave him no privilege to drive a vehicle on the public streets; that privilege is earned only by successfully completing the application process, including passing a written test, driving test, and eye test.

641 P.2d at 227 (citations omitted).

The only arguably significant distinction we perceive between the present case and *Francis* is that Roberts was convicted of DWLS under state law, while *Francis* was convicted under the Anchorage Municipal Code. Although the state relies on this distinction in urging us not to apply our decision in *Francis* to the present case, we decline to do so. As we noted in our opinion, the DWLS ordinance in *Francis* was analogous to the Alaska Statutes. *Francis*, 641 P.2d at 227. Moreover, while Francis was convicted under the municipal DWLS ordinance, it was the state, not the municipality, that had previously purported to suspend Francis' license. The validity of the state suspension was thus the legal issue on which Francis' claim ultimately turned. Since Francis' driving privileges had been suspended under state law rather than city ordinance, our holding in that case was necessarily based on an interpretation of both state and municipal law.

The state nevertheless requests that we consider overruling *Francis*. It advances two arguments in support of this request. Initially, the state relies on former AS 28.-35.230(b) (renumbered AS 28.40.050), which states:

(b) A person convicted of a misdemeanor for a violation of a provision of this title for which another penalty is not specifically provided is punishable by a fine of not more than $500, or by imprisonment for not more than ninety days, or by both. *In addition, the privilege to drive or the registration of vehicles may be suspended or revoked.* [Emphasis added].

The state points out that the penalties specified in this statute are applicable to the offense of DWLS, since no penalties are otherwise expressly provided for that offense. *See* AS 28.15.011(b). The state's argument is that, since a license suspension is expressly authorized under former AS 28.35.230(b), and since that provision applies to persons convicted of DWLS, then it must follow that it is possible to suspend the license, or "privilege to drive," of an unlicensed driver.

The state's argument might seem plausible if former AS 28.35.230(b) were a penalty provision dealing specifically with the offense of DWLS. Yet it is not. Instead, former AS 28.35.230(b) is a generic penalty provision, broadly applicable to violations of all Title 28 provisions for which the specific penalties are given. Consequently, inclusion of license suspension as a possible penalty in AS 28.35.230(b) gives little realistic insight to whether the legislature actually intended unlicensed drivers to be subject to license suspensions.

The state's second statutory argument is based on AS 28.15.011(a), which provides:

(a) No person shall be denied the privilege to drive a motor vehicle upon a highway in this state, except as prescribed by law.

The state argues that the effect of this statute is to confer on all citizens of Alaska a "privilege to drive," which can be restricted only by law. Under this interpretation, all persons—presumably including infants and children—are privileged drivers, and, hence, their driving privileges can be suspended before they are licensed.

The state's interpretation of AS 28.15.-011(a) was implicitly rejected by our holding in *Francis*. In our view, the provisions of AS 28.15.011(a) constitute a broad statement of the legislature's intent, in enacting the motor vehicle code, to adopt a statutory scheme that deals with the licensing of Alaska drivers in a comprehensive and uni-

form manner. We do not read this subsection as a legislative commitment to the philosophical concept of an innate privilege to drive.[4]

In short, we discern no basis for holding that this case is not wholly governed by our decision in *Francis*, nor are we convinced of any sound reason for overruling that precedent.

We are not insensitive to the fact that the current statutory scheme governing suspension of driver's licenses and the offense of DWLS, as interpreted by this court in *Francis*, may in certain instances lead to undesirable results. We emphasize, however, that *Francis* comports with Alaska's current statutory language and reflects the result reached in other jurisdictions that have addressed similar issues under similar statutory language. *See Francis*, 641 P.2d at 228.

At this stage we believe that the solution for any problems stemming from the current statutory language should properly be resolved through legislative action rather than by the process of judicial interpretation.[5]

The conviction is REVERSED.

COATS, J., not participating.

---

**4.** In any event the state's reading of AS 28.15.-011(b) ultimately fails to advance its argument. Assuming that the statute originally vested Roberts with a broad "privilege to drive," it is manifest that, under the provisions of the motor vehicle code, the privilege was extinguished by Roberts' failure to renew his California driver's license or to apply for an Alaska license. Thus, even under the state's theory it would be possible to conclude, that prior to the state's action to suspend driving privilege, his "privilege to drive" had in effect been denied "as prescribed by law." AS 28.15.011(a).

**5.** The New York legislature has apparently recently dealt with this issue and remedied prior legislation by expressly providing for suspension of "the privilege to obtain a license." Moreover, for the purposes of the offense of DWLS, New York Statutes expressly define an expired driver's license to fall within the definition of "license." *See People v. Rivera*, 95 Misc.2d 933, 408 N.Y.S.2d 723 (N.Y.Crim.Ct. 1978); *People v. Goodenough*, 89 Misc.2d 455, 391 N.Y.S.2d 940 (N.Y. Justice's Ct.1977).