**Jim H. FIELDING, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–1664.

Court of Appeals of Alaska.

April 7, 1987.

As Amended April 23, 1987.

Lisa M. Fitzpatrick, Asst. Public Defender and Dana Fabe, Public Defender, Anchorage, for appellant.

Brent Cole, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Jim H. Fielding was convicted after entering a plea of no contest to a charge of driving while his license was revoked (DWLR). Fielding reserved his right to appeal the district court's denial of his pretrial motion to dismiss. In his motion, Fielding claimed that a prior court order purporting to revoke his driver's license was invalid because he had no license to revoke when the order was issued. Fielding renews this claim on appeal. We affirm.

Fielding was issued a valid Alaska driver's license on May 11, 1979. The normal expiration date for that license would have been February 6, 1984.

In February 1981, Fielding was convicted of driving while intoxicated (DWI) and his license was revoked for three years. The period of revocation began on November 23, 1981, and was set to terminate on November 22, 1984. In December 1981, less than a month after this period of revocation began, Fielding was convicted of DWLR. Pursuant to AS 28.15.291(a), his license was revoked for another year, with the period of revocation beginning on November 23, 1984 (immediately after the expiration of the three-year revocation already in effect), and lasting until November 22, 1985.

In July 1984, still four months before the expiration of his first three-year revocation, Fielding was convicted of DWI and DWLR. Additional one-year periods of revocation were imposed for each conviction. Those periods were consecutive to each other and commenced after the periods of revocation already in effect, thus extending the total period of revocation from November 22, 1985, to November 22, 1987.

On December 25, 1985, Fielding was again charged with DWLR. He moved to dismiss the charge, challenging the validity of the sentencing order that purported to revoke his license from November 23, 1985, to November 22, 1986. Fielding pointed out that the 1985–86 revocation had been ordered in July 1984; his license was already revoked and, in any event, it was beyond the original expiration date of the license (February 6, 1984). The district court rejected Fielding's argument. He re-

news it on appeal. Fielding argued that the July 1984 order revoking his license was invalid because, at that time, he had no valid license to revoke.[1]

Fielding relies chiefly on this court's rulings in *Roberts v. State*, 700 P.2d 815 (Alaska App.1985), and *Francis v. Anchorage*, 641 P.2d 226 (Alaska App.1982). There, we construed applicable state statutes and municipal ordinances to require that a person be licensed or in some other manner privileged to drive before that person's license could properly be suspended or revoked. In *Roberts*, we invalidated a court order purporting to suspend the license of a person who had never been licensed to drive in Alaska and whose out-of-state license had expired before the suspension was ordered. In *Francis*, we found invalid an order purporting to suspend the license of a fourteen-year-old boy who had never been licensed.

Fielding's situation differs significantly from the situations in *Roberts* and *Francis*. It is undisputed that Fielding was validly licensed to drive when his license was initially revoked for the three-year period beginning November 23, 1981. Thus, the present case presents two narrow issues, neither of which was considered by us in *Roberts* or *Francis:* the first issue is whether the period of revocation on a validly revoked driver's license can be extended by the addition of a further period of revocation; the second, is whether a valid order of revocation survives beyond the original expiration date of the license revoked.

■ The first question is resolved by the language of AS 28.15.291(a), which governs the offense of DWLR, and which provides, in relevant part:

A person may not drive a motor vehicle on a highway or vehicular way or area at a time when that person's driver's license, or privilege to drive has been cancelled, suspended or revoked in this or another jurisdiction ... [U]pon conviction of a violation of this section ... the person's license or privilege to drive shall be revoked, and the person may not be issued a new license nor may the privilege to drive be restored for an additional period of not less than one year after the date that the person would have been entitled to the restoration of driving privileges.

By prescribing a one-year period of revocation upon conviction of DWLR, and by expressly requiring that period to be added to the period already in existence at the time of the offense, this section makes clear the legislature's intent to treat the added period as an extension of the original revocation. In effect, then, the additional period of revocation relates back to the original revocation; as long as the original revocation was valid, the additional revocation will be valid, even though, when it is ordered, the defendant technically no longer has a license to revoke.[2]

■ The second issue here presented— whether an order of revocation survives beyond the original expiration date of the revoked license—is resolved by a common sense reading of our decisions in *Roberts* and *Francis*. The critical issue under *Roberts* and *Francis* is whether a valid license or privilege to drive is in effect upon com-

1. Fielding argued that the correct charge in his case should have been for driving without a valid license, AS 28.15.011(b), rather than for driving while his license was suspended, AS 28.15.291(a). Presumably, from Fielding's point of view, the advantage of being charged with a violation of AS 28.15.011(a) is that mandatory minimum penalties are not prescribed upon conviction of that offense, as they are upon conviction of AS 28.15.291(a). *See Francis v. Anchorage*, 641 P.2d 226, 228 n. 5 (Alaska App. 1982).

2. On rehearing, Fielding has pointed out that the additional two-year period of revocation stemming from his July 1984 DWI and DWLR convictions actually consisted of two consecutive one-year revocations, one for DWI and one for DWLR. The DWI revocation took effect first, operating from November 23, 1985, to November 22, 1986; it was to be followed by the DWLR revocation. Fielding notes that his current offense, committed on December 25, 1985, occurred when his license was revoked for DWI, not DWLR.

According to Fielding, this is significant because AS 28.15.181, the statutory provision governing license revocation for DWI cases, differs from AS 28.15.291, which governs DWLR cases. The DWI provision does not expressly require consecutive periods of revocation. Despite the lack of express provision for consecutive license revocations in DWI cases, however, we find no indication that the legislature intended different treatment under AS 28.15.181 than that which it clearly provided for under AS 28.15.291. We see no reason to distinguish between revocations under these two statutes. We note that, in any event, such a distinction would not benefit Fielding. Assuming his DWI suspension were deemed invalid, its invalidity would necessarily trigger the running of the DWLR revocation, which was imposed consecutively.

mission of the offense for which a suspension is ordered. If a license or privilege exists, it is subject to revocation, and it can be revoked, in the discretion of the court, for any period permitted by law. Once the license is validly revoked, the revocation remains in effect for the full period ordered, regardless of whether the originally valid license might otherwise have expired at some point during the period of revocation. Nothing in logic or in the provisions of the Alaska Motor Vehicle Code compels or suggests a contrary result.[3]

We conclude that the district court did not err in denying Fielding's motion to dismiss.

The conviction is AFFIRMED.

---

3. The conclusion we reach is, moreover, consistent with the view taken by most of the courts that have considered the issue. *See, e.g., People v. Lopez,* 143 Colo. 523, 354 P.2d 491 (1960); *City and County of Denver v. Palmer,* 140 Colo. 27, 342 P.2d 687, 688 (1959); *Rickard v. District of Columbia,* 214 A.2d 476 (D.C.App.1965); *State v. Hood,* 320 N.W.2d 415, 416 (Minn.1982); *State v. Stankey,* 302 N.W.2d 347, 348 (Minn.

1981); *State v. Callahan,* 126 N.H. 161, 489 A.2d 130, 131 (1985); *State v. Giles,* 126 N.H. 170, 489 A.2d 129 (1985); *State v. Foster,* 54 Or.App. 405, 635 P.2d 11 (1981); *Preble v. State,* 402 S.W.2d 902 (Tex.Crim.App.1966).