## State of Vermont v. Charlotte Mary Mahoney

[ 176 A.2d 747 ]

November Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed December 15, 1961

*Thomas M. Debevoise,* Attorney General, and *William B. Goldsbury,* State's Attorney, for the State.

*Joseph S. Wool* and *Saul L. Agel* for the respondent.

**Smith, J.** The question presented is an interpretation of the legislative intent in the enactment of 13 V.S.A. Chapter 203, Evidence, Sub-Chapter 4, Depositions and Discovery (13 V.S.A. §§6721-6727) by the General Assembly of the State of Vermont in its session of 1961.

The section which this Court is asked to interpret in the light of the legislative intent is 13 V.S.A. §6721, quoted in the following paragraph:

"A respondent in a criminal cause at any time after the filing of an indictment, information or complaint, may take the deposition of a witness, upon motion and notice to the State and other respondents, and on showing that the witness' testimony may be material or relevant on the trial or of assistance in the preparation of his defense, and upon such showing the court, or superior judge, county court judge or municipal judge shall order that the testimony of the witness be taken by deposition."

The respondent, who is under a plea of not guilty to an indictment charging her with the murder of her husband, made a motion to take the depositions of certain individuals before trial in the Franklin County Court, under the provisions of the statute. As far as is material to the questions now before us the motion of the respondent was to take the depositions of three police officers of the city of St. Albans, as well as the depositions of three doctors, all of whom she stated were witnesses whose testimony would be material and relevant at the trial and of assistance in the preparation of her defense.

The State made no objection to the taking of the depositions of the three doctors as requested by the respondent, but did object to the taking of depositions by the respondent from the three police officers. Upon the trial court granting the motion of the respondent the State has filed its notice of appeal here. The brief of the State is confined entirely to the granting of the motion to take the depositions of the police officers. Error is claimed on the ground that a police officer is not a "witness" within the meaning of 13 V.S.A. §6721, concerning information which comes to such officer's attention during an investigation in preparation of the case of the State.

The statute here sought to be interpreted is unique in that no similar right of deposition before trial is given to a respondent in a criminal cause in either the federal jurisdiction or in that of any of the other states. It is not an amendment of an existing statute but is an entirely new enactment by the legislature, granting a right to a respondent in a criminal matter that did not previously exist.

The State's first contention is that by the use of the word "witness" in the act the legislative intent was to limit the meaning of that word to an "occurrence" witness, that is, a witness "who beholds, or otherwise has personal knowledge of" the crime with which a respondent is charged.

"The whole concern of statutory interpretation is the fulfillment of legislative intent. The definitive source of that intent is the statute itself, if the language of the enactment plainly sets it forth. Only where the objective of the legislation would be defeated by literal enforcement of statutory provisions can the Court, in construing a particular law, depart from the ordinary and usual meaning of the language used therein. Otherwise, enforcement must be according to the obvious terms." *St. Johnsbury* v. *Topsham,* 122 Vt. 268, 271, 169 A.2d 352.

■ The obvious meaning of the word witness is one who testifies to what he knows. Bouvier's Law Dictionary. But the State argues that a study of the history of the enactment will disclose that the legislative intent was to restrict "witness" to one who was an actual occurrence witness in defining from whom a deposition could be taken. A consideration of the history of the enactment is proper for our consideration in determining the meaning of a particular word used in a statute and we now do so. *Randolph* v. *Montgomery* 109 Vt. 130, 136, 194 Atl. 481.

A bill, which eventually became 13 V.S.A. §6721 *et seq.* was introduced in the House of Representatives of the legislature. The bill so introduced (H. 167, 1961) and which passed the House, repealed 13 V.S.A. §§6681, 6682, 6683 and 6684. These sections of the law allow the taking of a deposition for testimony *in perpetuam* in criminal cases. For a full exposition of such sections, see *Hackel* v. *Williams,* 122·Vt. 168, 167 A.2d 364. The bill entitled "AN ACT RELATING TO DEPOSITIONS AND DISCOVERY IN CRIMINAL MATTERS AND TO REPEAL 13 V.S.A. Sec. 6681-6684," sought to

enact what amounts to an exact copy of Rule 15 and Rule 16 of the Federal Rules of Civil Procedure as law in the state of Vermont.

Upon being sent to the Senate, the bill was referred to the Judiciary Committee of that body. While in the hands of that committee the bill underwent a metamorphic change. The provisions relating to the repeal of 13 V.S.A. §§ 6681, 6682, 6683 and 6684 were deleted, and the bill took on its present form as found in 13 V.S.A. §6721 *et seq.* In this form it passed both houses and became a statute.

. It is the rather tenuous reasoning of the State that the legislative intent to limit the word "witness" to "occurrence witness" occurs because the chairman of the Senate Judiciary Committee appeared in his professional capacity as attorney for the defendant in the case of *Hackel* v. *Williams, supra,* in which this attorney argued that the statute then being considered allowed a respondent to take depositions for preparing his case. The thin thread of argument is that because the witness, whose deposition was then being sought in *Hackel* v. *Williams, supra,* by the counsel for the defendant was, as the State claims, an occurrence witness, that the attorney involved, in his alter ego as chairman of the Senate Judiciary Committee, must have had the intent to limit the meaning of the word "witness" in the statute now being considered. This, says the State, is evidence that such intention on the part of the attorney became that of the legislature. Lacking before us is any history of the enactment that discloses that the chairman of the Senate Judiciary Committee drew or amended the final version of the bill, or that any statement was made by him, or anyone else in the legislative proceedings that the meaning of the word witness was to be limited as the State here contends. Even if this were so we would doubt that it would have the effect which the State would give it in the ascertaining of legislative intent.

■ Our rule is that every part of a statute must be considered and, if possible, effect given to every word, clause and sentence. *Myers and Son, Inc.* v. *Felopulos,* 116 Vt. 364, 367, 76 A.2d 552, 25 A.L.R.2d 665. Under the wording of 13 V.S.A. §6721, the witness whose deposition may be taken by a respondent in a criminal cause is one whose "testimony may be material or relevant on the trial or of assistance in the preparation of his defense."

■■ It is difficult to think of a phrasing that would allow more latitude in the definition of a witness than the one just quoted from

the statute. Authority to take testimony by deposition is in deroga-
tion of the common law and must therefore be strictly construed. *In
re Peters Estate,* 116 Vt. 32, 35, 69 A.2d 281. But to limit the word
"witness" to "occurrence witness" under the liberality expressed by
the legislature in its use of that word in the statute now under con-
sideration would be a clear negation on the part of this Court of the
clear and expressed intent of the lawmaking body.

The State contends that if the police officers are witnesses whose
depositions might otherwise be taken under 13 V.S.A. §6721 *et seq.*
the taking of such depositions from them is prohibited because as
police officers they are agents of the State, and that as such agents of
the State any knowledge obtained by them in their investigation of
the alleged crime is the knowledge of the State. In support of this
argument the State says the rule is that, in the absence of statutes so
providing, the State, when a plaintiff, may not be required through its
officers and agents to submit to an examination before trial on request
of the defendant, citing *People ex rel Port Petroleum Corp.* v. *Atlantic
Coast Terminals, Inc.,* 163 N.Y.S.2d. 913; 27 C.J.S. Discovery, p. 75.

We agree that such is the rule on the taking of depositions in civil
actions in the absence of statutory provisions to the contrary, but the
statute with which we are concerned relates only to depositions allowed
in a criminal cause. The relationship of plaintiff and defendant exists
only in civil actions, where a determination is sought of a controversy
between the contending parties. This is not the relationship between
the State and a respondent in a criminal cause. It is also the law, as
the State has argued, that information given by a private citizen to
an executive officer of the government of any information he has of the
commission of an offense against the laws is a privileged and confi-
dential communication, in the absence of assent on the part of the
government. *In re Quarles and Butler,* 158 U.S. 532, 535, 15 S.Ct.
959, 39 L.Ed. 1080.

The real question here before us is whether the legislature
by its enactment of 13 V.S.A. §6721 *et seq.* has afforded a respondent
a right to unlimited discovery in criminal cases. If so, a police officer
is as subject to deposition by a respondent as would be any other wit-
ness under the statute, for the legislature has all the law-making power
of the people not expressly reserved by the Constitution (*Bennington*
v. *Park,* 50 Vt. 178) and could give governmental assent to this pro-

cedure. Both the Vermont and the federal constitutions, while reserving to a defendant in a criminal prosecution vital safeguards for the protection of his rights under such proceedings, reserve no such immunities or rights to the government or state in the prosecution of criminal causes.

The decision of this Court in *Hackel* v. *Williams*, 122 Vt. 168, *supra*, was filed on Jan. 3, 1961. It may be presumed that the legislature, which convened on the following day, was aware of this decision before they enacted this statute. In holding in *Hackel* v. *Williams*, *supra*, that the statute then being construed (13 V.S.A. §6681) did not allow an unlimited discovery, Chief Justice Hulburd, the writer of the opinion stated:

> "We think that if it were within the contemplation of the legislature to adopt a procedure which was out of line with that existing in other states of the nation, it is unlikely that it would leave its intention in that regard to conjecture."

When the legislature enacted 13 V.S.A. §6721 *et seq.* it did not leave its intention to conjecture. Its clear and expressed intent was to give a respondent in a criminal cause the right to take the deposition of a witness upon a "showing" by the respondent that the testimony that might be elicited from such witness "may be material or relevant in the trial or of assistance in the preparation of his defense."

Stated in different language, once a respondent indicates that the depositions of the witness that he seeks may be likely to be of assistance in some way to help him in preparing a defense, even though the testimony of the witness may not be material or relevant on the trial of the cause, the magistrate to whom the respondent has applied for such order must grant his request. No discretion is vested in the magistrate to whom the motion is made once the respondent has made a "showing" called for under the statute.

The State, both in its brief and in oral argument before this Court, has expressed an understandable fear that without a limitation on the meaning of the terms of 13 V.S.A. §6721 *et seq.* as they have here sought, that this novel enactment will constitute a great potential danger to the administration of criminal justice in Vermont.

The statute, without a restriction of meaning of terms by this Court, so the State pleads, will give to a respondent a pre-trial right to inquire into the the State's investigation of an alleged offense, but without

right on the part of the State to use a similar procedure relative to any evidence that the respondent may possess as the result of any investigation made by him. Admittedly, constitutional grounds would bar the State from using a similar deposition procedure, if such were provided, which the statute before us gives to a respondent, but no such constitutional bar prevents the extension of such rights to a respondent.

Also expressed is the fear of the State that this statute might well be used by a criminal individual or group to intimidate witnesses that might otherwise testify for the State in the trial of a cause, and the State has called this Court's attention to a statement made by the Chief Justice of this Court in *Hackel* v. *Williams, supra*:

"If the law is to be that unlimited discovery is to be available to the accused in criminal proceedings, it is quite apparent that those who might otherwise plead guilty will avoid doing so. They will wait to see what discovery by deposition will reveal. To put it in the plain language of the street, they will first find out 'how much the State has got on them.' There is no policy in the law which would seem to require opening the door to this sort of thing. Indiscriminate and unrestricted discovery in all cases would not lead to justice, but justice perverted."

We have found here that the meaning of the statute being considered is plain, and that its provisions are susceptible only to one interpretation. The legislature, by this enactment, has granted a right of unlimited discovery to a respondent in a criminal cause. Whatever may be the opinions of the Justices of this Court, as individuals, as to the possible consequences of a legislative act, if the meaning is plain we cannot regard the consequences, for that would be assuming legislative authority. *State* v. *Franklin County Savings Bank and Trust Co.,* 74 Vt. 246, 263, 52 Atl. 1069. As was said by former Chief Justice Jeffords:

"If the meaning of a statute is plain and its provisions are susceptible of but one interpretation, the courts, in construing the statute, may not take into consideration the injustice which may be caused thereby. If the provisions of a statute are unfair or unjust, the remedy is by a change of the law itself, to be effected by the legislature, and not by judicial action in the guise of interpretation." *Donoghue* v. *Smith,* 119 Vt. 259, 267, 126 A.2d 93.

If, as the State contends, that by holding as we have here, certain inequities and injustices will result, it is not within the province or power of this Court to correct them. It is never permissible to substitute legislative for judicial functions. The arguments so advanced by the State are proper for consideration by the legislature but cannot be considered by us. *Lewis* v. *Holden,* 118 Vt. 59, 65, 99 A.2d 758.

*The order of the Franklin County Court is affirmed.*