### State of Vermont v. Robert Marvin Cady

[383 A.2d 607]

No. 62-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed February 7, 1978

*M. Jerome Diamond*, Attorney General, and *James E. Hirsch*, Assistant Attorney General, Montpelier, for Plaintiff.

*James L. Morse*, Defender General, *Charles S. Martin*, Appellate Defender, and *Anne Maher*, Law Clerk (On the Brief), Montpelier, for Defendant.

**Larrow, J.** Respondent was charged with operating a motor vehicle after his right or license to operate had been suspended by the Commissioner of Motor Vehicles, and before reinstatement, in violation of 23 V.S.A. § 674(a). The trial court found that respondent had never had a driver's license, despite notices of purported suspension thereof issued by the District Court and by the Commissioner following a previous conviction for driving under the influence. It certified to us, before final judgment, two questions relating to the propriety of the charge and the procedures used in suspending for failure to furnish proof of financial responsibility. We do not regard response to these questions as required, because a judgment of acquittal is clearly required upon the facts found by the trial court.

Whatever notices may have issued from the court upon his first conviction, or following that from the Commissioner of Motor Vehicles, the simple fact is that this respondent never *had* a license or right to operate a motor vehicle in Vermont. There was never anything for anyone to suspend or to reinstate. The charge of operating after his license or right to operate was suspended and before reinstatement is another instance of the prosecutorial "overkill" we have called attention to repeatedly. His obvious offense was operating without a license, and an appropriate information would have saved all parties concerned much time and trouble.

*The cause is remanded to the District Court for entry of judgment of acquittal.*

**Hill, J.,** concurring. I concur in the result.[1] I cannot, however, subscribe to the majority's reasoning.

---

[1] The verdict of acquittal must be sustained because neither of the two suspensions alleged to support a violation of 23 V.S.A. § 674 does so. The district court one-year suspension was issued by the court, not the Commissioner. 23 V.S.A. § 674 refers expressly to suspensions issued

## I.

The fact that respondent never had a "right to operate a motor vehicle," as those words are defined by the majority, has no bearing on whether the respondent's "right to operate a motor vehicle has been revoked, suspended or refused by the commissioner" (23 V.S.A. § 674(a)). In the statutory provisions in which the Legislature used the phrase "right to operate," it was either defining the ministerial act of "suspen[sion]" (23 V.S.A. §§ 671, 671a, 1206, 1208)[2] or the consequences of driving while subject to such suspension. 23 V.S.A. § 674.[3]

To sustain a violation of § 674, three elements must be proven: (1) suspension; (2) no reinstatement; and (3) operation. I think it clear that the language of § 674, "right to operate . . . has been . . . suspended . . . by the commissioner," refers to that ministerial act which the Commissioner is empowered to perform under §§ 671, 671(a), 1206 and 1208. To satisfy the suspension requirement of § 674, it is only necessary to find that the Commissioner has performed the ministerial act, i.e., that he has "suspend[ed] . . . the right to operate."

By reading the words "right to operate" out of context, the majority obscures the quite discernible thread which runs from the provisions defining the ministerial act of the Commissioner (23 V.S.A. §§ 671, 671a, 1206, 1208) to the provision which provides sanctions against one who drives after being subjected to such ministerial act (23 V.S.A. § 674). Furthermore, in construing the language at issue here so that

by the Commissioner. The second suspension was invalid because the Commissioner purported to issue it under 23 V.S.A. § 802 and, unlike 23 V.S.A. §§ 671, 671a, 1206 and 1208, 23 V.S.A. § 802 only empowers the Commissioner to suspend the right to operate of non-residents.

[2] The Commissioner of Motor Vehicles is given the discretionary power to suspend the right of an unlicensed person to operate a motor vehicle by 23 V.S.A. §§ 671(a), (b), (c), (d) and 671a, and he is required by 23 V.S.A. §§ 1206(a), 1208(a), (b), (d) and (f) to suspend the "privilege" of an unlicensed operator to operate a vehicle when such an operator is convicted of violating 23 V.S.A. § 1201 (driving while intoxicated).

[3] 23 V.S.A. § 674 makes it a violation to operate a motor vehicle upon the public highway when one's right to operate (or license) has been suspended (or revoked or refused) by the Commissioner and before such right has been reinstated.

the statutes make no sense, the majority ignores this Court's duty to avoid a construction which renders a statute ineffective, *Menut & Parks Co.* v. *Village of St. Johnsbury,* 114 Vt. 41, 45–46, 39 A.2d 342, 344–45 (1944), and to give effect, if possible, to every part of a statute. *State* v. *Mahoney,* 122 Vt. 456, 459, 176 A.2d 747, 749 (1961).

## II.

Even if it were necessary to a decision of this case for the Court to give content to the phrase "right to operate," the meaning which the majority implicitly assigns the phrase—permitted by law to drive on the highways—would not be a proper one. Such a meaning, although suggested by the words standing alone, is unacceptable because it is contrary to the statutory scheme. The anomalous state in which this decision leaves the motor vehicles law could have been avoided had the majority paid heed to this elemental rule of statutory construction:

> The true rule for the construction of statutes is to look to the whole and every part of the statute, and the apparent intention derived from the whole, to the subject matter, to the effects and consequences, and to the reason and spirit of the law, and thus ascertain the true meaning of the legislature, though the meaning so ascertained conflicts with the literal sense of the words.

*Billings* v. *Billings,* 114 Vt. 512, 514, 49 A.2d 179, 181 (1946), citing *Brammall* v. *LaRose,* 105 Vt. 345, 165 A. 916 (1933); *In re Fulham's Estate,* 96 Vt. 308, 119 A. 433 (1923); *et al.*

Section 674 prohibits operating a motor vehicle after a directive has been issued by the Commissioner stating that one's right to operate has been suspended. The punishment for driving while subject to such a directive is a fine of up to $500.00 or imprisonment for up to 30 days for the first offense, the allowable prison terms for subsequent offenses reaching as long as two (2) years. A licensed driver who is convicted of driving while intoxicated or who otherwise conducts himself dangerously on the highways can have his license revoked or suspended by the Commissioner. If he is found to have driven a car while the suspension is in effect,

he will be subject to the stiff penalties of 23 V.S.A. § 674. As a result of today's decision, an unlicensed driver in the same circumstances, though if anything *more* culpable than the licensed driver, can only be charged with operating without a license. 23 V.S.A. § 601(b). The penalty for this offense, no matter how repeatedly it is committed, is only a fine of up to $100.00. 23 V.S.A. § 1707. Even if the Commissioner, pursuant to statute, issues the unlicensed offender a notice stating that his right to operate is suspended, thereby placing him squarely in the class of persons who are subject to a charge of violating § 674, such a charge will fail if the offender was never legally permitted to drive.