Nos. 82,929
83,048
83,049
83,114
83,115

STATE OF KANSAS, *Appellant,* v. VICTOR L. BOWIE, *Appellee.*

(999 P.2d 947)

Opinion filed March 10, 2000.

*Katherine Von Kliem,* assistant district attorney, argued the cause, and *Joan M. Hamilton,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellant.

*Robert D. Eskildsen, Jr.,* assistant public defender, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The State appeals the Shawnee District Court's dismissal of the charge of driving while license suspended, in violation of K.S.A. 1998 Supp. 8-262(a). This appeal involves five cases from Shawnee County docketed as *State v. Victor L. Bowie,* No. 82,929; *State v. Rey O. Martinez,* No. 83,048; *State v. Garth B. Ortiz,* No. 83,049; *State v. Woodie C. Morgan, Jr.,* No. 83,114; and *State v. Victor L. Bowie,* No. 83,115. This court ordered the cases consolidated for determination under case No. 82,929. We have jurisdiction pursuant to K.S.A. 1999 Supp. 22-3602(b)(1). Victor Bowie is the only defendant/appellee who filed a brief. The district court dismissed felony charges against Bowie of driving while his license was suspended. The question we must resolve is whether a person who has not been licensed to drive can be found guilty

of driving while suspended rather than of driving without a valid driver's license.

Bowie has never been licensed, or otherwise authorized, to drive a motor vehicle. Before the charges in the present case were filed, he had entered pleas of no contest to charges of driving while suspended on three occasions—once in Shawnee District Court and twice in Topeka Municipal Court. In this case, he filed a motion to dismiss the charge, and it was granted by the district court. The district judge did not believe that the language of K.S.A. 1998 Supp. 8-262(a) would support the charge of driving while suspended against a person who never had a license. Moreover, in the district judge's opinion, K.S.A. 1998 Supp. 8-235, which prohibits driving without a valid driver's license, is the statute applicable to Bowie's conduct.

In the cases against the other defendants, the charge of driving while suspended was dismissed by the district court "pursuant to the Court's prior Memorandum Decision and order in State v. Victor Bowie, Case #98-CR-2566."

Bowie was charged under K.S.A. 1998 Supp. 8-262(a), which provides, in pertinent part: "Any person who drives a motor vehicle on any highway of this state at a time when such person's privilege so to do is canceled, suspended or revoked shall be guilty of a . . . severity level 9, nonperson felony on a third or subsequent conviction." He persuaded the district court that he could not be prosecuted under 8-262(a) because he had no driver's license and hence no privilege to drive that had been canceled, suspended, or revoked. The statute the district court believed was applicable in the circumstances is K.S.A. 1998 Supp. 8-235(a), which provides: "No person, except those expressly exempted, shall drive any motor vehicle upon a highway in this state unless such person has a valid driver's license." Violation of 8-235(a) is a misdemeanor.

The fundamental rule of statutory construction to be applied by the court is that the intent of the legislature governs when it can be ascertained. The legislative intention is to be determined from consideration of the entire act rather than disconnected provisions, and, if possible, effect must be given to the entire act and every part of it. To this end, it is the duty of the court, as far as practi-

cable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. See *State v. Bolin*, 266 Kan. 18, 24, 968 P.2d 1104 (1998).

With regard to the statutory scheme governing operation of motor vehicles, the State first calls to the court's attention the following definition of "license to operate a motor vehicle" in K.S.A. 8-1430:

" 'License' or 'license to operate a motor vehicle' means any driver's license or any other license or permit to operate a motor vehicle issued under, or granted by, the laws of this state, including:

(a) Any temporary license, or instruction permit;

(b) the privilege of any person to drive a motor vehicle whether or not such person holds a valid license; and

(c) any nonresident's operating privilege."

As phrased by the State in its brief, the clear meaning of subsection (b) of 8-1430 is that unlicensed drivers, such as Bowie, who willfully ignore the driver's license requirement and continue to drive "are assuming the benefits of the privilege." The State likens this statutory concept to a constructive privilege. In arguing that there can be no subsection (b) privilege without the State's creating it, Bowie focuses on the prefatory language, "issued under, or granted by, the laws of this state." The State's rejoinder is that a constructive privilege is a fiction created by the operation of law.

K.S.A. 1998 Supp. 8-262(a) prohibits a person from driving a motor vehicle on a highway of this state "at a time when such person's *privilege* so to do is canceled, suspended or revoked." (Emphasis added.) The State's position is that consideration of the statutory scheme rather than of 8-262(a) in isolation will show that the legislature did not intend for a person's *privilege* to drive to depend on his or her having a driver's license. K.S.A. 1998 Supp. 8-255(a) authorizes the division of vehicles "to suspend or revoke a person's driving *privileges*" upon a showing of circumstances enumerated in subsections (1) through (5). (Emphasis added.) K.S.A. 1998 Supp. 8-255(b) requires the division to suspend a person's driving privileges when required by 8-262 or K.S.A. 1998 Supp. 8-1014. The latter statute governs suspension and restriction of driving privileges for refusing or failing a test or failing to complete a

mandated treatment program. Subsection (f) of 8-1014 provides: "Upon restricting a person's driving privileges pursuant to this section, the division shall issue without charge a driver's license which shall indicate on the face of the license that restrictions have been imposed on the person's driving privileges . . . ." It is clear from this provision and 8-1430 that the terms "privilege" and "license" are used by the legislature to denote different things—a license is a tangible representation of a person's driving privilege.

The State presented evidence in the district court of the procedure used by the Department of Revenue's Driver Control Bureau for keeping track of the driving histories of unlicensed drivers. The witness testified that when an unlicensed driver is charged with an offense that could lead to a suspension of driving privileges, a computer-generated number is assigned to him or her for record keeping and notice purposes. There is no statutory authorization for the Bureau's practice, and no recognition or statutory authority for the Bureau to create a constructive privilege by assigning a number to a driver.

Kansas courts have had few opportunities to consider how driver's licenses and driving privileges are related. In *Schowengerdt v. Kansas Dept. of Revenue*, 14 Kan. App. 2d 147, 784 P.2d 387 (1989), the driver argued that his expired license could not be suspended. The district court affirmed the Department of Revenue's suspension of Schowengerdt's driving privileges. On appeal, the Court of Appeals affirmed. Following rules of statutory construction as stated in *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987), the Court of Appeals concluded:

"[I]f a license or privilege exists, it is subject to suspension, and it can be suspended for any period permitted by law. Once suspended, the suspension remains in effect for the full period ordered, regardless of whether the originally valid license might otherwise have expired at some point during the period of suspension. To hold otherwise would be counter to logic and would allow a driver to benefit from letting his driver's license expire. It is the privilege to drive that is suspended. The license itself merely represents that privilege." 14 Kan. App. 2d at 149.

In *State v. Mertz*, 258 Kan. 745, 907 P.2d 847 (1995), this court held that the defendant was not subjected to double jeopardy when

his license was suspended and a criminal charge was filed against him for one incident of driving while under the influence of alcohol. In considering whether the suspension constituted punishment, this court examined the suspension from an objective perspective rather than from the defendant's point of view. 258 Kan. at 756. From an objective viewpoint, a punitive purpose for the license suspension was imperceptible:

"*Popp v. Motor Vehicle Department*, 211 Kan. at 766, and *Schowengerdt v. Kansas Dept. of Revenue*, 14 Kan. App. 2d at 149, found that driving is not a natural right, but a privilege. If a driver does not abide by the conditions of the privilege, the license is subject to suspension in order to protect public safety and welfare. A sanction which revokes a privilege is a remedial sanction, not a punitive sanction. We hold the sanction in this case is remedial for two reasons. One, it is remedial because it protects the public welfare. Two, it is remedial because the suspension revokes a privilege which is being abused." 258 Kan. at 761.

On this ground, the trial court's dismissal of the criminal charge against Mertz was reversed and the matter remanded for trial.

In *Schowengerdt*, the Court of Appeals discussed a line of Alaska cases because several of them had been cited by Schowengerdt. 14 Kan. App. 2d at 148-49. Among the three Alaska cases discussed, *Francis v. Municipality of Anchorage*, 641 P.2d 226 (Alaska App. 1982), is the only one with some relevance to the present case. Francis did not have a valid driver's license, and the question he raised was substantially similar to the issue in the present case. The governing statutes defined "license to operate a motor vehicle" to include the "privilege" to drive irrespective of the person's holding a valid license, as the Kansas statutes do. The Alaska Court of Appeals concluded that the municipality did not intend Francis' situation—he was not old enough to have qualified for a license but he was eligible for a learning permit—to come within the meaning of "privilege." The learning permit that Francis was eligible for but had not obtained is specifically included in Anchorage's ordinance defining "license to operate a motor vehicle." 641 P.2d at 227 n.1.

In *Fielding v. State*, 733 P.2d 271 (Alaska App. 1987), Fielding had a valid driver's license when his string of driving convictions began; therefore, his issue differed significantly from the issue in

the present case. In *Roberts v. State*, 700 P.2d 815 (Alaska App. 1985), Roberts did not have a valid driver's license, and the question he raised was substantially similar to the issue in the present case. The governing statute, however, invested "privilege" with a peculiar meaning.

In 1978, the Vermont Supreme Court considered whether a person who never had a license could be charged under Vt. Stat. Ann. tit. 23, § 674, which made it a violation to operate a motor vehicle when one's right to operate (or license) has been suspended, revoked, or refused. *State v. Cady*, 136 Vt. 29, 383 A.2d 607 (1978). The Vermont court concluded that a person who never had a license could not be charged with driving while suspended but could be charged with driving without a license. The legislature subsequently expanded the definition of license to operate a motor vehicle. In *State v. Jarvis*, 145 Vt. 8, 482 A.2d 65 (1984), the court held that the statutory amendment eliminated the *Cady* defense. The determination was based on the amended definition of a license " 'to operate a motor vehicle issued under, or granted by, the laws of this state including . . . [t]he privilege of any person to operate a motor vehicle whether or not such person holds a valid license.' " 145 Vt. at 13 (quoting Vt. Stat. Ann. tit. 23, § 4[48]). As the State points out, the amended Vermont statute and the current Kansas statutory definition of a license to operate a motor vehicle are identical in all pertinent respects. The Anchorage municipal ordinance in *Francis*, 641 P.2d 226, also shared identity with the current Kansas statutory definition.

The defendant in *People v. Rivera*, 408 N.Y.S.2d 723, 95 Misc. 2d 933 (1978), had never applied for or received a driver's license and had had his nonexisting license suspended 22 times. In New York, driving without a license is a traffic infraction; driving while suspended is a misdemeanor. Rivera moved to have the most recent charge of driving while suspended dismissed on the ground that he had no license that could be suspended. His motion was denied. The court observed that the case was identical to *People v. Evans*, 359 N.Y.S.2d 449, 79 Misc. 2d 131 (1974), where a conviction was reversed because defendant had never been licensed to drive. In response, the legislature amended the driving statutes

so that an unlicensed driver's privilege to obtain a license could be suspended or revoked.

The opinions from these various foreign state courts appear to represent differing viewpoints, including some that favor the State's position here. Bowie, however, contends that all these foreign cases must be distinguished from the present case due to statutory provisions absent from the Kansas statutory scheme. For example, he points out that Vermont has a statute that defines "privilege to operate" to include the privilege of a resident to obtain a license. Vt. Stat. Ann. tit. 23, § 4(58) (1999). He asserts that Kansas has no similar provision. He would have the court conclude that what a Vermont court suspends when dealing with an unlicensed driver is the privilege to obtain a license, but that a Kansas court cannot do so for lack of specific authority.

We agree that the statutory scheme differs from state to state, and we need not look beyond the Kansas statutory scheme and Kansas cases for resolution of this issue. In *Mertz*, we noted that driving a motor vehicle in Kansas is not a natural right but a privilege. 258 Kan. at 761. That privilege is granted by the State and, pursuant to 8-235(a), the privilege to drive is granted only to those drivers with a valid license or those who are specifically exempt. K.S.A. 8-236 expressly exempts certain persons from driver's license requirements. Exempt persons include nonresidents with a valid license issued elsewhere, or whose home state or country does not require a license to drive, and persons operating farm equipment.

The legislature used the phrase "valid driver's license" in 8-235(a) and, by doing so, intended to specify the tangible representation of a driving privilege. In 8-262(a), the legislature uses the term "privilege" rather than "license" and, by so doing, demonstrated the intent to include licensed drivers as well as drivers exempt under 8-236. No other drivers are granted a privilege to drive in Kansas. Further, the legislature limited the scope of the provision to persons whose privilege to drive is "canceled, suspended or revoked." In so doing, the legislature intended for only licensed persons to be covered by 8-262(a). The district judge stated in this regard:

"I think the whole matter could be cleared up by the statute being amended by, if nothing else, if they just flat stated that any person who drives a motor vehicle on any highway of this state at the time when such person's privilege to do so was canceled, suspended, or revoked, they could add the words nonexistent or never legally present. And it's so easy to amend."

Bowie also argues that the statute prohibiting driving without a valid driver's license governs because it is more specific to his circumstances than the statute prohibiting driving while suspended. It is well established in Kansas courts that "where a statute dealing generally with a subject and a statute dealing specifically with a certain phase of the subject are conflicting, the more specific statute generally controls unless the legislature intended otherwise." *State v. LaMunyon*, 259 Kan. 54, Syl. ¶ 1, 911 P.2d 151 (1996). In this case, it does appear that the legislature intended for the driving without a valid driver's license statute to govern Bowie's circumstances. With the current wording of 8-262(a), it seems as if a first-time charge for an unlicensed driver should be under 8-235(a) because there has been no previous cancellation, suspension, or revocation of driving privileges. It appears, however, that every time would be like a "first-time charge" and therefore should be charged under 8-235(a) for an unlicensed driver. A driver who never gets a license never has it canceled, suspended, or revoked within the meaning of 8-262(a). The testimony of the employee of the Driver Control Bureau was that a file is created only for suspendable offenses. It does not appear that 8-235(a) is a "suspendable offense." If no record is made of an unlicensed driver's violation of 8-235(a), there is no possibility of suspension or revocation for multiple violations. See K.S.A. 1998 Supp. 8-255, K.S.A. 8-285, and K.S.A. 1998 Supp. 8-286.

The State's most persuasive argument is that the district court's interpretation of the statutes elevates an unlicensed driver to a legally superior position over a licensed driver and in doing so frustrates the legislature's intention to foster public highway safety. In the district court's scheme of things, an unlicensed driver can be convicted only of a class B misdemeanor—driving without a valid driver's license in violation of K.S.A. 1998 Supp. 8-235(a) and (e). K.S.A. 1998 Supp. 8-262(a)(1), in contrast, provides for escalation

of the penalty for a licensed driver from a class B misdemeanor for a first conviction to a class A misdemeanor on the second conviction to a felony on subsequent convictions. Thus, a licensed driver can be convicted of a felony for a third or subsequent conviction of driving while his license is canceled, suspended, or revoked. K.S.A. 1998 Supp. 8-262(b) authorizes extending the period of suspension or revocation upon conviction under 8-262(a). In addition, a person convicted three times within 5 years of driving while suspended, as prohibited by 8-262(a), is a habitual violator within the meaning of K.S.A. 8-285(a)(3) whose driving privileges shall be revoked for 3 years under K.S.A. 1998 Supp. 8-286. Such a result was noted by the New York court in *Evans*:

"What all this means, of course, is that the defendant has found a convenient loophole in the Vehicle and Traffic Law. Moreover, under the present state of the law an individual who flagrantly violates the law by never applying for a license but driving nevertheless is in a better legal position than an individual whose driving record is blemished by a single offense and whose license was consequently revoked. The flagrant lawbreaker apparently can only be charged with a violation upon his arrest . . . regardless of the number of convictions he has had for the same offense. However, the single offender subsequently arrested for operation while license is revoked is subject to prosecution for a misdemeanor. We urge the legislature to close the loophole and correct the obvious inequities in the law." 359 N.Y.S.2d at 451.

Notwithstanding the patent purpose of the legislature to promote safety on public highways, adopting the State's position on this issue would require the court to enlarge the phrase "canceled, suspended or revoked" to include driving privileges never granted. Because there are some criminal penalties involved, the statute before the court must be strictly construed in favor of the accused. As this court has stated, however, "[t]he rule of strict construction . . . is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent." *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235 (1998). A reasonable and sensible interpretation of the Kansas statutory scheme leads us to the conclusion that a person who never had a driver's license cannot be charged with driving while suspended pursuant to 8-262 but can be charged with driving without a license in violation of 8-235(a).

The judgment of the district court is affirmed.