948 A.2d 121

**Christopher Carl SULLIVAN**

v.

**STATE of Maryland.**

**No. 00068, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 9, 2008.

**36**

Steven D. Kupferberg (Debyn W. Purdie on the brief), Rockville, for Appellant.

Gary E. O'Connor (Douglas F. Gansler, Atty. General on the brief), Baltimore, for Appellee.

Panel: ADKINS, FREDERICK J. SHARER,* and
JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.

ADKINS, Judge.

After a bench trial, the Circuit Court for Montgomery
County found appellant Christopher Carl Sullivan guilty of
driving a motor vehicle on a highway on a revoked "license or
privilege to drive," in violation of Md.Code (1976, 2006 Repl.
Vol., 2007 Cum.Supp.), section 16–303(d) of the Transportation
Article (Trans.).[1] He challenges that conviction, raising two
issues for our review, the first of which presents a question of
first impression in Maryland:

I. Did the trial court err in rejecting Sullivan's argument
that he could not be convicted of driving on a revoked
license when he has never been issued a driver's li-
cense?

II. Did the trial court err in admitting a copy of Sullivan's
MVA record in the place of the original when the copy
is without an appropriate foundation and compliance
with the Maryland Rules?

Concluding that Sullivan could not be convicted of driving
on a revoked license when he has never been issued a driver's
license, we reverse his conviction.

## FACTS AND LEGAL PROCEEDINGS

At approximately 7:15 p.m. on August 31, 2006, Montgomery
County patrol officer Darrell Furdock stopped Sullivan while
he was driving near the intersection of Fisher Avenue and
Milford Mill Road. Furdock noted the odor of alcohol. Sgt.
Furdock asked Sullivan, a Maryland resident, for his driver's
license, but appellant could not produce a license. He ticketed

---

* J. Frederick Sharer, J., participated in the hearing and conference of
this case while an active member of this Court; he participated in the
adoption of this opinion as a retired, specially assigned member of this
Court.

1. In this opinion, all references to statutes are from the Transportation
Article unless noted.

Sullivan for, *inter alia,* driving on a revoked "license or privilege to drive" in violation of section 16–303.

At trial, Sullivan testified that he had never been issued a Maryland driver's license. Sullivan moved for acquittal on the ground that he could not be convicted of driving on a revoked license because he never had a license, much less had one revoked. In his view, the appropriate charge would have been driving without a license under section 16–101(a), which carries a lesser penalty.

The trial court denied the motion, reasoning that one could have a privilege to drive even without having a license. The court said: "[T]he right to drive, it's a privilege to drive, it's not a card you carry in your pocket[.]" When defense counsel disagreed, the following colloquy occurred:

The Court: Well, there's—how does one acquire a privilege to drive in the State of Maryland?

[Defense Counsel]: Make an application.

The Court: I know how you get a license, you make an application, but how do you get a privilege? There's a distinction between the two.

[Defense Counsel]: Sure, you make an application to get a license and they grant you the privilege by giving you that license.

The Court: See I think, in a lot of these statutes and in a lot of the cases they distinguish between the privilege to drive and the license to drive. . . . and it seems to me . . ., because the way they deal with it is that the privilege is sort of an automatic thing, as opposed to a license which you have to apply for until such time that, that privilege gets taken away.

The trial court then observed that MVA records "show[ed] that based upon accumulation of points, the State of Maryland has revoked his privilege[.]" This record shows that, as of March 20, 2007, Sullivan had 15 "total current points," and lists Sullivan's "license status" as "revoked & suspended." It identifies Sullivan's "OLN" as S–415–115–108–830, and lists various offenses and administrative actions beginning March

30, 1997. An entry for September 13, 2003 reads: "DELET-
ED FROM RECORD POINT SYSTEM REVOCATION."
Other entries show that Sullivan's license was "revoked" on
October 3, 2003 and "suspended" on July 8, 2005.[2]

Rejecting Sullivan's argument that, having never acquired a
license, he could not be convicted under section 16–303(d), the
trial court found Sullivan "guilty of driving on revoked privi-
lege." Sullivan noted this timely appeal.

## DISCUSSION

### Statutory Construction Of Vehicle Laws

 Established principles of statutory construction gov-
ern our review. To discern the legislature's intent in enacting
a penal statute such as this traffic law, "we look first to the
language of the statute," which we "read in light of the full
context of the statute[.]" *Jones v. State,* 357 Md. 141, 159, 742
A.2d 493 (1999). Our interpretation of this motor vehicle law
is informed by "a common sense approach" that eschews the
use of "narrow and strained construction" to exclude from its
operation circumstances that fall within the plain meaning and
scope of the language used by the legislature. *See State v.
Fabritz,* 276 Md. 416, 422, 348 A.2d 275 (1975); *Comstock v.
State,* 82 Md.App. 744, 752, 573 A.2d 117 (1990). Moreover,

"[w]here statutes relate to the same subject matter, and are
not inconsistent with each other, they should be construed
together and harmonized where consistent with their gener-
al object and scope." We accept the presumption that the
Legislature intended that which it enacted and "[n]either
statute should be read ... so as to render the other, or any
portion of it, meaningless, surplusage, superfluous or nuga-
tory."

---

**2.** The State agrees that Sullivan never acquired a license. There is
nothing in the record to explain what an "OLN" is, or the significance
of the accompanying number, which is consistent with the numbers
assigned to the individual Maryland driver's licenses.

*Gwin v. Motor Vehicle Admin.,* 385 Md. 440, 462, 869 A.2d 822 (2005) (citations omitted).

### Driving On A Revoked "Privilege To Drive"

Under section 16–101(a) of the Transportation Article, all drivers of passenger cars on Maryland highways must be either licensed or exempted from licensing requirements:

> (a) *In general.*—An individual may not drive or attempt to drive a motor vehicle on any highway in this State unless:
>
> (1) The individual holds a driver's license issued under this title;
>
> (2) The individual is expressly exempt from the licensing requirements of this title; or
>
> (3) The individual otherwise is specifically authorized by this title to drive vehicles of the class that the individual is driving or attempting to drive.

Section 16–102, in turn, excludes certain drivers from the licensing requirement, but none of these exclusions applies to Sullivan.[3] A misdemeanor conviction for "driving while not licensed" results in the assessment of five points and a fine of up to $500. *See* Transp. § 16–402(a)(14)(after conviction for violation of vehicle laws, "points shall be assessed" as specified in this subsection); Transp. § 27–101(b)("Except as otherwise provided in this section, any person convicted of a misdemeanor for the violation of any of the provisions of the Maryland Vehicle Law is subject to a fine of not more than $500").

At issue in this appeal is section 16–303(d), which provides that "[a] person may not drive a motor vehicle on any highway . . . while the person's license or privilege to drive is revoked in this State."[4] A conviction may be punished, for a first

---

**3.** These exclusions include, for example, nonresidents licensed in other states, members of the military and Congress, licensed foreign nationals, and emergency personnel. *See* Transp. § 16–102.

**4.** For a history of this statute, see *Jones v. State,* 357 Md. 141, 159–61, 742 A.2d 493 (1999). Relevant to this appeal is that the disjunctive "license or privilege to drive" has consistently appeared in the statute since its enactment in 1916. *See id.* at 160, 742 A.2d 493.

offense, by "a fine of not more than $1,000, or imprisonment for not more than 1 year, or both[,]" and "[f]or any subsequent offense, a fine of not more than $1,000, or imprisonment for not more than 2 years, or both." Transp. § 27–101(h). In addition, with exceptions not relevant here, a conviction for driving after revocation results in the assessment of 12 points. *See* Transp. § 16–402(a)(30).

Although the term "license" has been defined by the General Assembly,[5] the phrase "privilege to drive" has not. This language regularly appears in the disjunctive with the term "license," but there is neither regulation nor case law defining "privilege to drive" in the context of section 16–303(d), or otherwise explaining how a "privilege to drive" differs from a "license."

On appeal Sullivan renews his arguments that he cannot be convicted of driving on a revoked license because he has never been issued a license, and that he cannot be convicted of driving on a revoked privilege to drive because he has never qualified to drive without a license. Acknowledging that there is no Maryland precedent on this question, Sullivan interprets "privilege to drive" to mean only the permission granted to drivers under those exceptions to the licensing requirements set forth in section 16–102. He also cites dictum in *Tederick v. State,* 125 Md.App. 37, 723 A.2d 917, *aff'd sub nom. Jones v. State,* 357 Md. 141, 742 A.2d 493 (1999), and out-of-state cases adopting his reasoning.

Sullivan points first to a philosophical query posed in dictum in *Tederick,* which he suggests supports his position. In *Tederick,* this Court held that double jeopardy principles did not preclude two separate convictions under section 16–303(d) for a single act of driving on a license that had, on separate

---

**5.** "License" is defined to mean any of the various authorizations granted by virtue of a temporary, restricted, provisional, or permanent driver's license obtained from the MVA, as well as "[t]he privilege of any individual to drive a motor vehicle, whether or not that individual is formally licensed by this or any other jurisdiction[.]" Transp. § 11–128.

occasions, first been revoked and then later suspended. *See Tederick,* 125 Md.App. at 47, 723 A.2d 917. Writing for the Court, Judge Moylan offered the following aside:

> We are not even tempted to grapple with the intimidating philosophical question of how one can suspend something that has earlier been revoked. When the privilege to drive is revoked, it thereby becomes nonexistent. How, then, can one subsequently suspend nothing?

*Id.* at 45 n. 3, 723 A.2d 917. The Court of Appeals, reviewing our decision, treated driving on a revoked license and driving on a suspended license as separate offenses, but held that a single act of driving cannot be punished twice under sentencing merger principles. See *Jones,* 357 Md. at 152, 742 A.2d 493. In doing so, the Court quoted Judge Moylan's "cogent footnote," and decided to "likewise follow the same path." *See id.* at 152 n. 5, 742 A.2d 493.

This case requires us to answer the analogous and likewise challenging question of how the State can revoke a license that has never been issued. As Sullivan points out, many courts called upon to construe similar statutory schemes have held that a defendant who has never been issued a license, and is not exempt from the requirement of obtaining one, cannot be convicted of driving on a revoked or suspended license.

In *Kansas v. Bowie,* 268 Kan. 794, 999 P.2d 947 (2000), for example, the Supreme Court of Kansas interpreted a statutory scheme in which separate code provisions also required all drivers to have a license and prohibited driving on a canceled, suspended, or revoked license.[6] After considering cases interpreting various statutory schemes, the Kansas court held that

---

6. Bowie was charged with violating a law similar to Transp. section 16–303. Under K.S.A.1998 Supp. 8–262(a), " 'Any person who drives a motor vehicle on any highway of this state at a time when such person's privilege so to do is canceled, suspended or revoked shall be guilty of a ... severity level 9, nonperson felony on a third or subsequent conviction.' " *Kansas v. Bowie,* 268 Kan. 794, 999 P.2d 947, 948 (2000). Kansas also has a statutory analog to Transp. section 16–101, because K.S.A.1998 Supp. 8–235(a) provides that "No person, except those expressly exempted, shall drive any motor vehicle upon a highway in this state unless such person has a valid driver's license." *See id.*

"a person who never had a driver's license cannot be charged with driving while suspended ... but can be charged with driving without a license[.]" *Id.* at 952. The court reasoned:

**[D]riving a motor vehicle in Kansas is not a natural right but a privilege. That privilege is granted by the State and, pursuant to 8–235(a), the privilege to drive is granted only to those drivers with a valid license or those who are specifically exempt....** Exempt persons include nonresidents with a valid license issued elsewhere, or whose home state or country does not require a license to drive, and persons operating farm equipment.

The legislature used the phrase "valid driver's license" in 8–235(a) and, by doing so, intended to specify the tangible representation of a driving privilege. In 8–262(a), the legislature uses the term "privilege" rather than "license" and, by so doing, demonstrated the intent to include licensed drivers as well as drivers exempt under 8–236. **No other drivers are granted a privilege to drive in Kansas. Further, the legislature limited the scope of the provision to persons whose privilege to drive is "canceled, suspended or revoked." In so doing, the legislature intended for only licensed persons to be covered by 8–262(a).**

*Id.* at 951 (emphasis added and citations omitted).

The court also relied on the settled principle of statutory construction that a more specific statute generally controls:

Bowie also argues that the statute prohibiting driving without a valid driver's license governs because it is more specific to his circumstances than the statute prohibiting driving while suspended. It is well established in Kansas courts that "where a statute dealing generally with a subject and a statute dealing specifically with a certain phase of the subject are conflicting, the more specific statute generally controls unless the legislature intended otherwise." In this case, it does appear that the legislature intended for the driving without a valid driver's license statute to govern Bowie's circumstances ... A driver who never gets a license

never has it canceled, suspended, or revoked within the meaning of 8–262(a).

*Id.* (citations omitted). *See, e.g., GEICO v. Ins. Comm'r,* 332 Md. 124, 132–33, 630 A.2d 713 (1993)("Where provisions of one of the statutes deal with the common subject generally and those of the other do so more specifically, the statutes may be harmonized by viewing the more specific statute as an exception to the more general one").

In reaching this conclusion, the Kansas court rejected the government's argument that such an interpretation of the statutory scheme "elevates an unlicensed driver to a legally superior position over a licensed driver and in doing so frustrates the legislature's intention to foster public highway safety." *Bowie,* 999 P.2d at 951–52. Acknowledging the appeal of this point, the *Bowie* Court nevertheless concluded that the problem required a legislative fix:

Notwithstanding the patent purpose of the legislature to promote safety on public highways, adopting the State's position on this issue would require the court to enlarge the phrase "canceled, suspended or revoked" to include driving privileges never granted.... A reasonable and sensible interpretation of the Kansas statutory scheme leads us to the conclusion that a person who never had a driver's license cannot be charged with driving while suspended pursuant to 8–262 but can be charged with driving without a license in violation of 8–235(a).

*Id.* at 952 (citation omitted).

In *City of Billings v. Gonzales,* 331 Mont. 71, 128 P.3d 1014, 1016 (2006), the Supreme Court of Montana reached a similar conclusion in interpreting its statutory scheme, which, like Maryland's, grants the privilege to drive only to those who have been issued a driver's license or otherwise qualify for a statutory exemption. A separate provision prohibits driving "when the person's privilege to do so is suspended or revoked[.]" Following the Kansas court's decision in *Bowie,* the Montana court agreed with five drivers that they could not be charged under this law, because they had never been licensed:

The distinction throughout Title 61 between "license" or "driving privilege" . . . demonstrates that individuals lawfully can drive in Montana either by obtaining a driver's license pursuant to § 61–5–102, MCA, or by establishing that they have a privilege to drive without a license pursuant to § 61–5–104, MCA.

The plain language of § 61–5–212, MCA, requires that a person possess a privilege to drive before that privilege can be suspended or revoked. We have determined that the privilege to drive must be granted by law. Therefore, absent a license or privilege to drive without a license pursuant to § 61–5–104, MCA, the State cannot convict a person under § 61–5–212, MCA, with driving while license suspended or revoked. **Adopting the State's position would require this Court to enlarge the phrase "suspended or revoked" of § 61–5–212, MCA, to include a driving privilege never granted. It is not the role of this Court to insert what has been omitted when applying statutes.** *Id.* at 1016–17 (emphasis added).

The Montana Supreme Court recognized that the State's "recourse when dealing with unlicensed drivers" is to charge them "with driving without a license[,]" even if that violation carries a slightly lesser penalty than the one for driving on a revoked or suspended license. *See id.* at 1017. Thus, "[a] reasonable and sensible interpretation of the relevant statutory scheme leads us to conclude that a person who does not have a privilege to drive, either through a driver's license or statutory licensure exemption, cannot be charged with driving while their privilege has been suspended or revoked[.]" *Id.*

In *New York v. Evans,* 79 Misc.2d 131, 359 N.Y.S.2d 449, 451 (Co.Ct.1974), a New York trial court, when reviewing a conviction for operating a vehicle while the driver's license was suspended or revoked, commented on the inequities of a comparable statutory scheme existing at that time:

What all this means, of course, is that the defendant has found a convenient loophole in the Vehicle and Traffic Law. . . . [A]n individual who flagrantly violates the law by

never applying for a license but driving nevertheless is in a better legal position than an individual whose driving record is blemished by a single offense and whose license was consequently revoked. The flagrant lawbreaker apparently can only be charged with a violation upon his arrest ... regardless of the number of convictions he has had for the same offense. However, the single offender subsequently arrested for operation while license is revoked is subject to prosecution for a misdemeanor. We urge the legislature to close the loophole and correct the obvious inequities in the law.

The court, nonetheless, reversed Evans's conviction.[7]

Other courts have reached similar decisions. *See, e.g., Francis v. Municipality of Anchorage*, 641 P.2d 226, 228 (Alaska Ct.App.1982)(15 year old who had never had a license could not be convicted of driving on a suspended license even though ordinance defined "license to operate a motor vehicle" to include the "privilege to drive" because there must be some kind of legal authorization to drive before a license or driving privilege can be suspended); *City of Aberdeen v. Cole*, 13 Wash.App. 617, 537 P.2d 1073, 1074 (1975)("The Department of Motor Vehicles could not suspend that which [defendant] did not have").

The State contends that these cases are distinguishable, because the interpreted statutes "do not treat the terms 'license' and 'privilege' disjunctively, as Maryland's statute does." The State points out that section 16–303 applies not only to drivers who have had their licenses revoked or suspended, but also to drivers who have had their "privilege" to drive revoked or suspended. We are not persuaded by this "disjunctive" distinction, because it rests on the assumption that in section 16–303, the legislature, in referring to a person's "license or privilege to drive," intended that an individual has a "privilege" to drive that is independent from that obtained via a driver's license, but is not limited to the specific

---

7. *See infra* for a discussion of the New York legislature's revision of the statute in response to this decision.

exemptions from licensing requirements enumerated in section 16–102.

Yet neither section 16–303, nor any other section of the Transportation Article, defines "privilege to drive." [8] Section 16–101 states, in pertinent part:

(a) An individual may not drive or attempt to drive a motor vehicle on any highway in this State unless:

(1)The individual holds a driver's license issued under this title;

(2) The individual is **expressly exempt** from the licensing requirements of this title; or

(3) The individual otherwise is specifically authorized by this title to drive vehicles of the class that the individual is driving or attempting to drive. (Emphasis added.)

Although section 16–102 does not explicitly define "privilege to drive," it does explicitly exclude certain drivers from the section 16–101 requirement that a license be obtained.[9] In that sense, it implicitly defines who has the "privilege to drive" on Maryland roads without obtaining a license from the State. These exclusions include, for example, nonresidents licensed in other states, members of the military and Congress, licensed foreign nationals, and emergency personnel. None of these exclusions applies to Sullivan.

We conclude, based on our examination of Title 16 (Vehicle Laws–Drivers' License) of the Transportation Article, especially the section 16–101(a) prohibition against driving

---

**8.** Although the phrase "license or privilege to drive" appears frequently in the Transportation Article, as well as in other articles in the Maryland Code and in the Code of Maryland Regulations, the only definition relating to "privilege to drive" appears in Transp. section 11–140, which circularly defines a "Nonresident's privilege to drive" as "the privilege granted to a nonresident by the laws of this State to drive a motor vehicle in this State or to use in this State a vehicle owned by the nonresident."

**9.** Trans. section 16–102 begins with the general statement: "The licensing requirements of this title do not apply to," and contains a two page list of particular exemptions.

without a license or express exemption, that an unlicensed individual does not have a "privilege to drive" in Maryland unless the individual falls within the exemptions set forth in section 16–102. Because Sullivan does not qualify for any of these statutory exemptions, he did not have a "privilege to drive" that the MVA could "revoke," as section 16–303(d) contemplates.

The State points to a few cases from other jurisdictions, which it describes as having "rejected similar arguments." In *Carroll v. Florida*, 761 So.2d 417 (Fla.Ct.App.2000), the court interpreted a statute prohibiting driving while a person's license is "suspended or revoked." The *Carroll* Court held that a defendant who had never been issued a driver's license could be convicted "as a habitual traffic offender whose driver's license (driving privilege) had been revoked or suspended." *Id.* at 419. It based that decision on the statute's use of driving "privilege" and "license" interchangeably:

> [S]ection 322.27(1)(b), Florida Statutes (1997), states:
>
> (b) A person whose driving privilege has been **revoked** under s. 322.27(5) may, upon expiration of 12 months from the date of such revocation, petition the department for **restoration of his or her driving privilege.** Upon such petition and after investigation . . . the department shall hold a hearing . . . to determine whether the **driving privilege** shall be restored on a restricted basis solely for business or employment purposes.
>
> **Given the above interchangeable use of the terms in the statute, we must conclude that the legislature intended the terms "driving privilege" and "driver's license" to mean the same thing and to apply equally to either situation. Consequently, as applied to appellant, we must conclude that his lack of a driver's license did not relieve him from conviction as a habitual traffic offender whose driver's license (driving privilege) had been revoked or suspended.**

*Id.* at 418–19 (emphasis added).

■ The Florida court's reasoning is not persuasive. Here, construing the terms "license" and "privilege to drive" to

mean the same thing would require us to ignore sound canons of statutory construction designed to ensure judicial respect for legislative enactments. Such an interpretation of the phrase "privilege to drive" not only renders it meaningless surplusage, but also ignores the reasonable interpretation of this language in the context of the prohibition in section 16–101 against driving without a license or one of the exemptions created in section 16–102. *See Gwin v. Motor Vehicle Admin.,* 385 Md. 440, 462, 869 A.2d 822 (2005). "[W]here statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is different from its plain meaning." *State v. Fabritz,* 276 Md. 416, 421–22, 348 A.2d 275 (1975).

Neither are we persuaded by *Minnesota v. Clark,* 361 N.W.2d 104 (Minn.Ct.App.1985), which is also cited by the State. There, the court held that a driver who never had a valid driver's license could be convicted of driving after revocation.

The aggravated violation statute provides that any person who operates a vehicle "before his driver's license or driver's privilege" has been reinstated after being revoked for a D.W.I. or refusal to take a breath test is guilty of a gross misdemeanor. A driver's license is defined . . . . as:

any operator's license or any other license or permit to operate a motor vehicle issued or issuable under the laws of this state* * * including:

\* \* \*

(b) The privilege of any person to drive a motor vehicle whether or not such person holds a valid license * * *.

**Appellant's privilege to drive was revoked and was not reinstated, even if he never had a valid license. He may be convicted . . . of the aggravated violation.**

*Id.* at 108 (citations omitted; emphasis added). The language bolded above constitutes the only analysis set forth by the

Minnesota court, and we do not perceive the logic of its conclusion.

In *California v. Matas*, 200 Cal.App.3d Supp. 7, 246 Cal. Rptr. 627 (1988), another case relied on by the State, the court held that a statute applying to persons whose driving privilege had been suspended or revoked also applied to a person who, like Sullivan, had never been issued a license, but whose driving privileges had been suspended. The key distinction between this case and *Matas* is that the California statute explicitly applies to the never-licensed person:

> Vehicle Code section 14601.1, subdivision (a) provides that: "No person shall drive a motor vehicle when his or her driving *privilege* is suspended or revoked for any reason . . . when the person so driving has knowledge of the suspension or revocation. Knowledge shall be presumed if notice has been given. . . ." (Italics added.)

> Since respondents were driving after they had been given notice that their driving privileges had been suspended, respondents are implicated by the plain meaning of the statute.

> Further support for this interpretation is found in Vehicle Code section 13553 which provides that: "Whenever a court or the department suspends or revokes the *privilege* of any person to operate a motor vehicle **and the person does not hold a valid driver's license, or has never applied for or received a driver's license in this State, the person shall be subject to any and all penalties and disabilities provided in this code for a violation of the terms and conditions of a suspension or revocation of the privilege to operate a motor vehicle.**"

*Id.* at 627–28 (citation omitted; bold added).

Statutory differences also distinguish this case from *New York v. Rivera*, 95 Misc.2d 933, 408 N.Y.S.2d 723 (Crim.Ct. 1978), also cited by the State. In *Rivera*, the defendant was not permitted to use his lack of licensure as a defense to a charge of driving on a suspended license. But the court rested its decision on a modification to the New York statute

that was made in response to the *Evans* decision discussed above.

The uncontroverted facts are that the defendant does not have a license, never applied for one and indeed, never had one. He has received repeated summonses for motor vehicle violations however. This case is identical to *People v. Evans*, 79 Misc.2d 131, 359 N.Y.S.2d 449 (1974) where the Court reversed a conviction ... because the defendant had never been licensed to drive. The Court there refused to conclude that "license" ... should be read in its generic sense as synonymous with "operating privilege." In so doing, however, the Court recognized that the defendant had found a convenient loophole in the law. The Court in *Evans* urged the legislature to correct this inequity in the law.

In 1976, [the statute] was amended to read "Any person operating a motor vehicle upon a public highway while his license or his privilege of operating a motor vehicle in this state **or his privilege of obtaining a license issued by the commissioner** is suspended or revoked shall be guilty of a misdemeanor[.]"

*Id.* at 723–24 (emphasis added).

The State's next argument is based on reasonableness:

Sullivan's construction of the statute is not reasonable. It is not reasonable to presume that the legislature intended to punish people who obtained a license more harshly than people who did not obtain a license. That is particularly true when, as here, a person has been stopped repeatedly for driving violations.

The point that the State makes about disparity in punishment is well-taken, and we agree this is a good reason for the legislature to consider modifying section 16–303 or other sections of the Transportation Article to remedy this seeming incongruity. But, given the existing clear language in the statute, we do not agree that we can ignore that language in order to decide this case based on the relative equities or consistency of these statutory penalties. *See Fabritz*, 276 Md.

at 421–22, 348 A.2d 275. The current statutory scheme is easily harmonized by interpreting "privilege to drive" to mean "exempt from the licensing requirement, for one of the reasons enumerated in section 16–102." Although this scheme punishes driving on a revoked license more seriously than driving without a license, we decline the State's invitation to usurp the legislature's role of revising statutory language in the guise of presuming that it did not intend this result. *See Gwin*, 385 Md. at 462, 869 A.2d 822.

Finally, the State argues that other illogical consequences will flow from Sullivan's interpretation of section 16–303:

Treating the term "license" and "privilege" to mean only "a driver's license issued by the State of Maryland" would lead to an illogical result in construing other parts of the Transportation Article. Suppose a person who owed substantial child support in Maryland had a driver's license issued in Virginia. The State of Maryland would not be able to revoke that person's Virginia license. If that person did not have a Maryland license, the State would be unable to take action to affect his or her ability to drive in the state [under Transp. § 16–203 authorizing suspension of child support obligor's "license or privilege to drive in the State"].

The State's hypothetical does not hold up under scrutiny. A child support obligor's right to drive in Maryland on a Virginia license may be suspended for failure to pay support. Although the State cannot suspend the Virginia license itself, it may suspend the Virginia resident's privilege to drive in Maryland. *See* § 16–102(a)(9)(exempting from licensure requirement a nonresident with a license from the state of his residence); § 16–202(a)("The privilege given to a nonresident to drive a motor vehicle on highways in this State may be suspended or revoked by the Administration in the same way and for the same reasons that a driver's license issued under this title may be refused, suspended, or revoked"); § 16–203 (governing proceedings to suspend or restrict child support obligor's "license or privilege to drive"); Md.Code (1984, 2006 Repl.Vol.), § 10–119(b) of the Family Law Article (permitting

suspension or restriction of license for failure to pay child support).

■ The State charged Sullivan with driving while his license was revoked in violation of Trans. section 16–303. It could have, but apparently did not, charge him with driving without a license in violation of sections 16–101 and 16–102.[10] Because Sullivan cannot be convicted of driving while his "license or privilege to drive" was revoked unless he once had a license or exemption, we must reverse the verdict of the trial court and vacate his conviction. In light of our decision, we do not reach the second issue presented.

**JUDGMENT REVERSED AND CONVICTION VACATED. COSTS TO BE PAID BY MONTGOMERY COUNTY.**

---

**10.** Oddly, section 16–101 states the prohibition against driving without a license, unless expressly exempted, but does not say it is a crime to do so. On the other hand, section 16–102, which enumerates the exemptions, establishes the crime. Subsection (c) of section 16–102 provides: "An individual who is subject to the provisions of this section and who fails to comply with the provisions of this section is guilty of a misdemeanor." Although section 16–102 contains no prohibition, and does not refer to section 16–101, we read these two sections together and deduce that the misdemeanor created in section 16 –102 is intended to apply to a violation of 16–101 that is not exempted by 16–102.